# IN THE UNITED STATES COURT OF APPEALS
## *for the*
## FOURTH CIRCUIT

SUSAN SCHARPF and ANTHONY D'ARMIENTO,
on behalf of themselves and all others similarly situated

*Plaintiffs-Appellants,*

v.

GENERAL DYNAMICS CORP.; BATH IRON WORKS CORP.;
ELECTRIC BOAT CORP.; GENERAL DYNAMICS INFORMATION
TECHNOLOGY, INC.; HUNTINGTON INGALLS INDUSTRIES,
INC.; NEWPORT NEWS SHIPBUILDING AND DRY DOCK CO.;
INGALLS SHIPBUILDING, INC.; HII MISSION TECHNOLOGIES
CORP.; HII FLEET SUPPORT GROUP LLC; MARINETTE MARINE
CORPORATION; BOLLINGER SHIPYARDS, LLC; GIBBS & COX,
INC.; SERCO, INC.; CACI INTERNATIONAL, INC.; THE
COLUMBIA GROUP, INC.; THOR SOLUTIONS, LLC; TRIDENTIS,
LLC; FASTSTREAM RECRUITMENT LTD.,

*Defendants-Appellees.*

*On Appeal from the United States District Court
for the Eastern District of Virginia at Alexandria
No. 1:23-cv-01372-AJT-WEF*

## BRIEF OF DEFENDANTS-APPELLEES

*Counsel for Defendants-Appellees Listed
on the Following Page*

Adam Block Schwartz
Todd Stenerson
David Higbee
Djordje Petkoski
Joseph Paul Samuels
ALLEN OVERY SHEARMAN
STERLING US LLP
1101 New York Avenue, NW
Washington, DC 20005
Tel: (202) 508-8000

Sima Namiri-Kalantari
CROWELL & MORING LLP
515 South Flower Street
40th Floor
Los Angeles, CA 90071
Tel: (213) 622-4750

Chahira Solh
CROWELL & MORING LLP
3 Park Plaza
20th Floor
Irvine, CA 92614
Tel: (949) 263-8400

*Counsel for Defendants-Appellees
Huntington Ingalls Industries,
Inc., HII Fleet Support Group
LLC, HII Mission Technologies
Corp., Ingalls Shipbuilding, Inc.,
and Newport News Shipbuilding
and Dry Dock Co.*

John F. Terzaken, III
Abram J. Ellis
SIMPSON THACHER &
BARTLETT LLP
900 G Street, NW

Matthew S. Hellman
Douglas E. Litvack
Elizabeth B. Deutsch
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000

Michael A. Doornweerd
Gabriel K. Gillett
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
Tel: (312) 923-2631

David G. Barger
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard
Suite 1000
McLean, VA 22102
Tel: (703) 749-1307

*Counsel for Defendants-Appellees
Bath Iron Works Corp., Electric
Boat Corp., General Dynamics
Corp., and General Dynamics
Information Technology, Inc.*

Attison L. Barnes, III
Krystal B. Swendsboe
Scott M. McCaleb
Jon W. Burd
Daniel T. Park
WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
Tel: (202) 719-7000

Washington, DC 20001
Tel: (202) 636-5500

Allison W. Reimann
GODFREY & KAHN, S.C.
One East Main Street
Suite 500
Madison, WI 53703
Tel: (608) 257-3911

Sean O'D. Bosack
Christie B. Carrino
GODFREY & KAHN, S.C.
833 East Michigan Street
Suite 1800
Milwaukee, WI 53202
Tel: (414) 273-3500

*Counsel for Defendant-Appellee*
*Marinette Marine Corp.*

Perry Lange
Jennifer Milici
John W. O'Toole
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: (202) 663-6000

*Counsel for Defendant-Appellee*
*Gibbs & Cox, Inc.*

William T. DeVinney
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road
Suite 750
Tysons Corner, VA 22182

*Counsel for Defendant-Appellee*
*Bollinger Shipyards, LLC*

Benjamin L. Hatch
Casey Erin Lucier
MCGUIREWOODS LLP
888 16th Street, NW
Washington, DC 20006
Tel: (202) 857-1700

J. Brent Justus
Nicholas J. Giles
Joshua D. Wade
W. Cole Geddy
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1018

*Counsel for Defendant-Appellee*
*Serco, Inc.*

Christopher C. Brewer
Ryan P. Phair
Michael F. Murray
Craig Y. Lee
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
Tel: (202) 551-1700

*Counsel for Defendant-Appellee*
*CACI International Inc.*

Tel: (703) 942-8076

*Counsel for Defendant-Appellee*
*The Columbia Group, Inc.*

William Lawler
Amanda C. DeLaPerriere
BLANK ROME LLP
1825 Eye Street, NW
Washington, DC 20006
Tel: (202) 420-2249

*Counsel for Defendant-Appellee*
*Tridentis, LLC*

Matthew J. MacLean
Alvin Dunn
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Tel: (202) 663-8183

*Counsel for Defendant-Appellee*
*Thor Solutions, LLC*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1465     Caption: Scharpf, et al. v. General Dynamics Corp., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Bath Iron Works Corp.
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO

2.     Does party/amicus have any parent corporations?                        ☑YES ☐NO
       If yes, identify all parent corporations, including all generations of parent corporations:

        General Dynamics Corp.

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                                          ☑YES ☐NO
       If yes, identify all such owners:

        General Dynamics Corp.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____June 5, 2024_____

Counsel for: Bath Iron Works Corp._____

- 2 -

[ Print to PDF for Filing ]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>24-1465</u>      Caption: <u>Susan Scharpf, et al. v. General Dynamics Corp., et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Bollinger Shipyards, LLC</u>
(name of party/amicus)

_____

who is <u>appellee</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____June 5, 2024_____

Counsel for: Bollinger Shipyards, LLC_____

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1465__      Caption: __Scharpf, et al. v. General Dynamics Corp., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__CACI International Inc__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO


2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
         financial interest in the outcome of the litigation?                              ☐YES ☑NO
         If yes, identify entity and nature of interest:


5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
         If yes, identify any publicly held member whose stock or equity value could be affected
         substantially by the outcome of the proceeding or whose claims the trade association is
         pursuing in a representative capacity, or state that there is no such member:


6.      Does this case arise out of a bankruptcy proceeding?                              ☐YES ☑NO
         If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
         party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
         caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
         corporation that owns 10% or more of the stock of the debtor.


7.      Is this a criminal case in which there was an organizational victim?              ☐YES ☑NO
         If yes, the United States, absent good cause shown, must list (1) each organizational
         victim of the criminal activity and (2) if an organizational victim is a corporation, the
         parent corporation and any publicly held corporation that owns 10% or more of the stock
         of victim, to the extent that information can be obtained through due diligence.


Signature: __/s/ Michael F. Murray_____        Date: _____06/05/2024_____

Counsel for: __CACI International Inc_____

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1465          Caption: Scharpf, et al. v. General Dynamics Corp., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Electric Boat Corp.
(name of party/amicus)


who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO


2.    Does party/amicus have any parent corporations?                ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      General Dynamics Corp.



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                 ☑YES ☐NO
      If yes, identify all such owners:

      General Dynamics Corp.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?         ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: _____        Date: _____ June 5, 2024 _____

Counsel for: Electric Boat Corp.

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1465__          Caption: __Scharpf, et al. v. General Dynamics Corp., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__General Dynamics Corp.__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO

2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                 ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?                    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?                    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.

Signature: _____        Date: _____June 5, 2024_____

Counsel for: _General Dynamics Corp._____

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1465__      Caption: __Scharpf, et al. v. General Dynamics Corp., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__General Dynamics Information Technology, Inc.__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO


2.     Does party/amicus have any parent corporations?                    ☑YES ☐NO
       If yes, identify all parent corporations, including all generations of parent corporations:

        General Dynamics Corp.



3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                                        ☑YES ☐NO
       If yes, identify all such owners:

        General Dynamics Corp.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?          ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?          ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____June 5, 2024_____

Counsel for: _____General Dynamics Information Technology, Inc._____

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-1465__     Caption: __Scharpf, et al. v. General Dynamics Corp., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

Gibbs & Cox, Inc.
_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO


2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   Leidos Holdings, Inc.


3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
   If yes, identify all such owners:
   BlackRock, Inc.or its subsidiaries hold more than 10% of the stock in Leidos Holdings, Inc., based on BlackRock Inc.'s Schedule 13G/A (Amendment No. 12), filed on January 23, 2024.

   The Vanguard Group or its subsidiaries hold more than 10% of the stock in Leidos Holdings, Inc., based on The Vanguard Group's Schedule 13G/A (Amendment No. 11), filed on February 13, 2024.

DocuSign Envelope ID: 37F461B06286-484D-A670-9F5B2C500220B

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: _Perry Lange_____     Date: ____06/03/2024____

Counsel for: Gibbs & Cox, Inc._____

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 24-1465          Caption: SUSAN SCHARPF v. GENERAL DYNAMICS CORP.

Pursuant to FRAP 26.1 and Local Rule 26.1,

HII FLEET SUPPORT GROUP LLC

(name of party/amicus)


who is _____appellee_____ makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☒NO


2.    Does party/amicus have any parent corporations?                ☒YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      HII Fleet Support Group LLC is a wholly-owned subsidiary of Fleet Services Holding Corp.
      Fleet Services Holding Corp. is a wholly-owned subsidiary of Huntington Ingalls Incorporated.
      Huntington Ingalls Inc. is a wholly-owned subsidiary of Huntington Ingalls Industries, Inc.


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                 ☐YES ☒NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☒NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question) ☐YES ☒NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding? ☐YES ☒NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim? ☐YES ☒NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _Adam Schwartz_    Date: _June 5, 2024_

Counsel for: _HII FLEET SUPPORT GROUP LLC_

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1465          Caption: SUSAN SCHARPF v. GENERAL DYNAMICS CORP.

Pursuant to FRAP 26.1 and Local Rule 26.1,

HII MISSION TECHNOLOGIES CORP.
(name of party/amicus)

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

2.  Does party/amicus have any parent corporations?  ☒ YES ☐ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    HII Mission Technologies Corp. is a wholly-owned subsidiary of HII TSD Holding Company. HII TSD Holding Company is a wholly-owned subsidiary of HII Technical Solutions Corporation.  HII Technical Solutions Corporation is a wholly-owned subsidiary of Huntington Ingalls Industries, Inc.

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☒NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☒NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☒NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES ☒NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:  _Adam Schwartz_                    Date:  _June 5, 2024_

Counsel for:  _HII MISSION TECHNOLOGIES CORP._

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1465__        Caption: __SUSAN SCHARPF v. GENERAL DYNAMICS CORP.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__HUNTINGTON INGALLS INDUSTRIES , INC__
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  [X] YES [ ] NO

2.    Does party/amicus have any parent corporations?                    [ ] YES [X] NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                         [ ] YES [X] NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation?                    ☐YES☒NO
        If yes, identify entity and nature of interest:


5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES☒NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:


6.      Does this case arise out of a bankruptcy proceeding?                    ☐YES☒NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
        party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
        caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
        corporation that owns 10% or more of the stock of the debtor.


7.      Is this a criminal case in which there was an organizational victim?      ☐YES☒NO
        If yes, the United States, absent good cause shown, must list (1) each organizational
        victim of the criminal activity and (2) if an organizational victim is a corporation, the
        parent corporation and any publicly held corporation that owns 10% or more of the stock
        of victim, to the extent that information can be obtained through due diligence.


Signature: _Adam Schwartz_____      Date: _June 5, 2024_____

Counsel for: _HUNTINGTON INGALLS INDUSTRIES, INC_____

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1465__        Caption: __SUSAN SCHARPF v. GENERAL DYNAMICS CORP.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__INGALLS SHIPBUILDING, INC.__
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☒ NO

2.    Does party/amicus have any parent corporations?              ☒ YES ☐ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      Ingalls Shipbuilding, Inc. is a wholly-owned subsidiary of Huntington Ingalls Incorporated. Huntington Ingalls Incorporated is a wholly-owned subsidiary of Huntington Ingalls Industries, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                    ☐ YES ☒ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    ☐YES ☒NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)      ☐YES ☒NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☒NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?                    ☐YES ☒NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _Adam Schwartz_____        Date: __June 5, 2024_____

Counsel for: __INGALLS SHIPBUILDING, INC._____

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>24-1465</u>         Caption: <u>Scharpf et al. v. General Dynamics Corp. et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Marinette Marine Corporation</u>
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☑ YES ☐ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

       Fincantieri Marine Group, LLC ("FMG")

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☑ YES ☐ NO
      If yes, identify all such owners:
       FMG's sole member is Fincantieri Marine Group Holdings Inc. ("FMGH"). Lockheed Martin
       Corporation, which is publicly traded on the NYSE, holds an ownership interest in FMGH.
       Fincantieri Marine Group Holdings Inc. also is an indirect subsidiary of Fincantieri S.p.A., which
       has issued shares to the public through the Milan Stock Exchange. Marinette Marine is not
       aware of any other entities that own 10% or more of Marinette Marine's stock.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?      ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?      ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____      Date: _____6-5-2024_____

Counsel for: __Marinette Marine Corporation_____

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. ___24-1465___      Caption: __SUSAN SCHARPF v. GENERAL DYNAMICS CORP.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY__

(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

2.  Does party/amicus have any parent corporations?  ☒ YES ☐ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    Newport News Shipbuilding and Dry Dock Company is a wholly-owned subsidiary of Huntington Ingalls Incorporated.  Huntington Ingalls Incorporated is a wholly-owned subsidiary of Huntington Ingalls Industries, Inc.

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                                   ☐YES ☒NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)     ☐YES ☒NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                          ☐YES ☒NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?          ☐YES ☒NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:  _Adam Schwartz_                           Date:  June 5, 2024

Counsel for:  NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1465      Caption: Susan Scharpf; Anthony D'Armiento v. General Dynamics Corp., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Serco Inc.
_____
(name of party/amicus)

_____

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?  ☑ YES ☐ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   Serco Inc. is a wholly owned subsidiary of Serco North America (Holdings) Inc., a Delaware corporation. Serco North America (Holdings) Inc. is wholly owned by Serco Holdings Limited, a United Kingdom entity. The ultimate parent of Serco Holdings Limited is Serco Group Plc, which is publicly traded on the London stock exchange (LON: SRP).

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO
   If yes, identify all such owners:

   Serco Inc. is an indirect, wholly-owned subsidiary of Serco Group Plc, which is publicly traded on the London stock exchange(LON: SRP).

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?      ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?      ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____      Date: _____06/05/2024_____

Counsel for: Serco Inc._____

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>24-1465</u>          Caption: <u>Sharpf v. General Dynamics Corp.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>The Columbia Group, Inc.</u>
(name of party/amicus)

_____

 who is _____<u>an appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?                    ☑ YES ☐ NO
       If yes, identify all parent corporations, including all generations of parent corporations:

       The Columbia Group of Virgnia, Inc.

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                            ☐ YES ☑ NO
       If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: _____       Date: _____June 17, 2024_____

Counsel for: _The Columbia Group_____

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>24-1465</u>    Caption: <u>Scharpf, et al. v. General Dynamics Corp., et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Thor Solutions, LLC</u>
(name of party/amicus)

_____

who is _____<u>an appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?                          ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                          ☐YES ☑NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                      ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Matthew J. MacLean          Date: 6/5/2024

Counsel for: Thor Solutions, LLC

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1465    Caption: Scharpf, et al. v. General Dynamics Corp., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Tridentis LLC
(name of party/amicus)

_____

who is _____an appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?                    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?        ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Amanda DeLaPerriere                    Date:        6/11/2024

Counsel for: Tridentis LLC

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

TABLE OF CITATIONS ............................................................ iii

INTRODUCTION .................................................................. 1

STATEMENT OF ISSUES ........................................................ 5

STATEMENT OF THE CASE ................................................... 6

    A.    Defendants Build and Maintain the U.S. Public Fleet, with Typical Projects Involving Multiple Contractors and Subcontractors. ........................... 6

    B.    Plaintiffs' Allegations of Conspiracy. ..................... 10

    C.    Plaintiffs Allege That Defendants Fraudulently Concealed Their Supposed "Gentlemen's Agreement." .................................................. 12

    D.    The District Court Dismisses Plaintiffs' Decades-Old Claims As Time-Barred. ............................... 14

SUMMARY OF ARGUMENT .................................................. 18

STANDARD OF REVIEW ...................................................... 21

ARGUMENT ..................................................................... 22

I.    The District Court Correctly Held That Plaintiffs' Fraudulent Concealment Allegations Fail As a Matter of Law. ........................................................ 22

    A.    The District Court Correctly Held That Plaintiffs' Allegation That Defendants' Agreement Was "Secret" and "Unwritten" Is Insufficient to Justify Tolling. .................................................. 22

          1.    Circuit Precedent Forecloses Plaintiffs' Arguments. .......................................... 22

2.      Plaintiffs' Arguments to the Contrary Fail. ...............32

B.      The District Court Correctly Held That Plaintiffs' "Sham" Allegations Are Insufficient. ...................37

1.      Teaming Agreements Encouraged by the Government and Not Challenged by Plaintiffs Are Not Shams................38

2.      Plaintiffs' Sham Allegations Do Not Satisfy Rule 9(b). .........................41

3.      Plaintiffs Do Not Allege That They Were Even Aware of Teaming Agreements, Let Alone Deceived by Them. ...............42

C.      The District Court Correctly Held That Plaintiffs' Allegations That Defendants Made Generic Statements Are Insufficient As a Matter of Law. ...............45

II.     Plaintiffs' Failure to Allege Due Diligence Provides an Additional Independent Ground for Affirmance...........47

A.      Plaintiffs' Allegations Show They Were on Inquiry Notice and Could Have Learned of the Alleged Agreement upon Investigation. ...............48

B.      Plaintiffs Do Not Explain How They Discovered the Supposed Agreement in 2023........53

III.    The District Court Did Not Abuse Its Discretion by Dismissing Without Leave to Amend............55

CONCLUSION ........................60

# TABLE OF CITATIONS

PAGE(S)

CASES

*ACA Financial Guaranty Corp. v. City of Buena Vista,*
    917 F.3d 206 (4th Cir. 2019) ........................................................ 57–58

*In re Animation Workers Antitrust Litigation,*
    87 F. Supp. 3d 1195 (N.D. Cal. 2015) ........................................... 31, 34

*Bausch v. Philatelic Leasing, Ltd.,*
    34 F.3d 1066 (Table), 1994 WL 446758 (4th Cir. 1994) ................... 52

*Boland v. Consolidated Multiple Listing Service, Inc.,*
    868 F. Supp. 2d 506 (D.S.C. 2011) .................................. 24, 25, 31, 33

*Brumbaugh v. Princeton Partners,*
    985 F.2d 157 (4th Cir. 1993) ............................................................. 49

*Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.,*
    546 F.2d 570 (4th Cir. 1976) ...................................................... 31, 54

*In re Coordinated Pretrial Proceedings in Petroleum Products*
    *Antitrust Litigation,*
    782 F. Supp. 487 (C.D. Cal. 1991) ................................................... 44

*Corder v. Antero Resources Corp.,*
    57 F.4th 384 (4th Cir. 2023) .................................................. 14, 23–24

*Corner Post, Inc. v. Board of Governors of the Federal Reserve*
    *System,*
    144 S. Ct. 2440 (2024) ...................................................................... 46

*Cozzarelli v. Inspire Pharmaceuticals Inc.,*
    549 F.3d 618 (4th Cir. 2008) ............................................................ 57

*CSX Transportation, Inc. v. Norfolk Southern Railway Co.,*
    --- F.4th ----, 2024 WL 3974989 (4th Cir. Aug. 29, 2024) ....... 25–26, 31

*Detrick v. Panalpina, Inc.*,
    108 F.3d 529 (4th Cir. 1997)................................................................46

*Donaldson v. Primary Residential Mortgage, Inc.*,
    2020 WL 3184089 (D. Md. June 12, 2020)........................................39

*Drager v. PLIVA USA, Inc.*,
    741 F.3d 470 (4th Cir. 2014)..............................................................21

*Edmonson v. Eagle National Bank*,
    922 F.3d 535 (4th Cir. 2019)......................................................*passim*

*Ekstrom v. Congressional Bank*,
    2020 WL 6565251 (D. Md. Nov. 9, 2020) ..........................................39

*Fedance v. Harris*,
    1 F.4th 1278 (11th Cir. 2021) ............................................................54

*Garrison v. Oracle Corp.*,
    159 F. Supp. 3d 1044 (N.D. Cal. 2016)........................................46, 51

*GO Computer, Inc. v. Microsoft Corp.*,
    437 F. Supp. 2d 497 (D. Md. 2006).....................................................23

*GO Computer, Inc. v. Microsoft Corp.*,
    508 F.3d 170 (4th Cir. 2007)......................................................*passim*

*Grayson O Co. v. Agadir International LLC*,
    856 F.3d 307 (4th Cir. 2017)..............................................................56

*Jones v. Saxon Mortg., Inc.*,
    980 F. Supp. 842 (E.D. Va. 1997) ......................................................54

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997) ...........................................................................46

*Laber v. Harvey*,
    438 F.3d 404 (4th Cir. 2006)..............................................................56

*Matrix Capital Management Fund, LP v. BearingPoint, Inc.*,
    576 F.3d 172 (4th Cir. 2009)........................................................58, 59

*Mayor of Baltimore v. Actelion Pharmaceuticals Ltd.*,
  995 F.3d 123 (4th Cir. 2021) ............................................................ 45

*McAnaney v. Astoria Financial Corp.*,
  2007 WL 2702348 (E.D.N.Y. Sept. 12, 2007) .................................... 44

*In re Merrill, Bofa, & Morgan Stanley Spoofing Litigation*,
  2021 WL 827190 (S.D.N.Y. Mar. 4, 2021) .......................................... 46

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*,
  828 F.2d 211 (4th Cir. 1987) ................................................... *passim*

*In re Pool Products Distribution Market Antitrust Litigation*,
  988 F. Supp. 2d 696 (E.D. La. 2013) ...................................... 32, 34, 52

*In re Refrigerant Compressors Antitrust Litigation*,
  795 F. Supp. 2d 647 (E.D. Mich. 2011) ........................................ 32, 34

*Robertson v. Sea Pines Real Estate Cos.*,
  679 F.3d 278 (4th Cir. 2012) ................................................... *passim*

*Roy v. Bank of New York Mellon*,
  2018 WL 3912281 (E.D.N.Y. Aug. 14, 2018) ...................................... 44

*Ruth v. Unifund CCR Partners*,
  604 F.3d 908 (6th Cir. 2010) ........................................................ 44, 45

*Ryan v. Microsoft Corp.*,
  147 F. Supp. 3d 868 (N.D. Cal. 2015) ................................ 32, 46, 51–52

*SD3, LLC v. Black & Decker (U.S.), Inc.*,
  215 F. Supp. 3d 486 (E.D. Va. 2016) ............................................ 30, 43

*SD3 II LLC v. Black & Decker (U.S.) Inc.*,
  888 F.3d 98 (4th Cir. 2018) ..................................................... 48, 49, 52

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
  988 F.3d 690 (4th Cir. 2021) ........................................................... 45

*Summerhill v. Terminix, Inc.*,
  637 F.3d 877 (8th Cir. 2011) ........................................................... 54

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*,
    71 F.3d 119 (4th Cir. 1995).........................................*passim*

*Towers v. Iger*,
    2017 WL 6044035 (N.D. Cal. Mar. 10, 2017).......................31

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008)...............................41

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971)...........................................46

**STATUTES & RULES**

Fed. R. Civ. P. 7(b)....................................................57

Fed. R. Civ. P. 9(b)................................................*passim*

Fed. R. Civ. P. 15(a)..................................................57

National Defense Authorization Act for Fiscal Year 1998,
    Pub. L. No. 105-85, § 121(b), 111 Stat. 1629, 1648 (1997).................38

**OTHER AUTHORITIES**

48 C.F.R. § 9.602(a) ...........................................9, 38

## INTRODUCTION

In dismissing Plaintiffs' decades-old claims as time-barred, the district court faithfully applied the well-settled precedent of this Court and the consensus rule of courts nationwide. On appeal, Plaintiffs ignore that uniform precedent and ask this Court to create a tolling doctrine that would all but nullify the statute of limitations in antitrust cases. In particular, Plaintiffs contend that the statute of limitations should be tolled in perpetuity so long as the plaintiff alleges nothing more than that the supposed illegal agreement is "secret" and "unwritten." This Court should reject Plaintiffs' meritless arguments and affirm.

Plaintiffs' complaint alleges that shipbuilders responsible for designing and constructing the United States' public fleet maintained a secret "gentlemen's agreement" not to recruit each other's naval engineers, which Plaintiffs say depressed their salaries. Plaintiffs, however, have not worked in the industry since *2004* and *2013*, respectively. Plaintiffs concede, as they must, that their long-lapsed employment means that the governing four-year statute of limitations for their claims expired years before they filed this suit in October 2023.

Plaintiffs contend that their lengthy delay should be excused due to "fraudulent concealment." But Plaintiffs have alleged no fraud that could justify their delay, let alone pleaded fraud with the particularity that Rule 9(b) requires. Plaintiffs' primary basis for tolling exists in essentially *every* antitrust conspiracy case: an allegation that Defendants kept their ostensible agreement secret by not putting it "in writing." As Judge Trenga explained below, the Fourth Circuit and other courts around the country have repeatedly held that allegations the defendants maintained a secret agreement, refused to discuss it publicly, or even disclaimed its existence are not affirmative acts of concealment that justify tolling. Plaintiffs do not cite a single case that has ever held that declining to write down an agreement constitutes fraudulent concealment. And Plaintiffs' complaint is devoid of Rule 9(b) specifics. They plead no particularities—even upon information and belief—about who directed the supposed agreement to be unwritten, or how or when such instructions were carried out over the decades since Plaintiffs' claims accrued. As Judge Trenga correctly held, a bare allegation of an unwritten agreement cannot justify reviving those claims today.

Plaintiffs fare no better with their backup argument, that Defendants adopted "sham" contracts to hide their "gentlemen's agreement." As Judge Trenga recognized, Plaintiffs do not contend that the contracts in question (so-called "teaming agreements") were themselves illegal or illegitimate. In any case, Plaintiffs have not alleged that they were even aware of these teaming agreements, nor do they provide any other particulars of how or when these agreements were deployed as a sham. Legal conduct that Plaintiffs did not know about cannot justify their delay in suing. And Plaintiffs concede they did *zero* diligence to investigate their claims in the decades since they accrued, which is an independent ground for affirmance under Circuit precedent.

On appeal, Plaintiffs rely almost entirely on a case they barely mentioned below. But *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119 (4th Cir. 1995), did not hold that plaintiffs get unlimited tolling by alleging the mere existence of an unwritten agreement. In fact, the case did not hold that *any* particular allegations were sufficient to meet the relevant test, let alone whether such allegations satisfy Rule 9(b); the *Marlinton* Court addressed only the correct standard to apply in fraudulent concealment cases. Circuit

precedent before and after *Marlinton* has expressly rejected allegations like Plaintiffs' both because they do not satisfy the affirmative acts standard and because they do not comply with Rule 9(b).

Finally, Fourth Circuit case law (which Plaintiffs fail to cite) forecloses their belated argument that they should have been given leave to amend. Plaintiffs neither moved for leave to amend below, nor informed the district court what additional allegations they would provide. Each of these failures independently establishes that the district court did not abuse its discretion in dismissing with prejudice.

Plaintiffs' true argument on appeal is one of policy, not precedent. They suggest bad acts will go unpunished if they are not allowed to pursue their stale claims. But Plaintiffs have not alleged actual misconduct. Their brief is long on rhetoric about a widespread "conspiracy" according to anonymous "witnesses," but Plaintiffs' actual complaint lacks specific allegations that Defendants "agreed" to anything at all. Plaintiffs allege, at most, that individual Defendants maintained unilateral hiring practices against poaching. Plaintiffs then intimate that affirmance would greenlight "obviously concealing conduct." Br. 39. Hardly. The alleged "concealing" conduct in this case is entering into

written teaming agreements encouraged by the federal government and failing to commit a supposed broader "secret" agreement to writing. It is Plaintiffs' rule, not the district court's, that would distort the law of fraudulent concealment beyond recognition and render Rule 9(b) meaningless.

Regardless, the relevant policy decision here is Congress's. Permitting indefinite tolling based on a conclusory allegation that an alleged unlawful agreement is unwritten (including where, as here, the plaintiffs made no effort to investigate their claims) would vitiate Congress's careful choice to impose a four-year statute of limitations. As this Court has put it, Plaintiffs' position would "stretch and swell the limitations period to roughly three or four times the one Congress specified. To allow this litigation to proceed would simply eviscerate Congress' intent." *GO Comput., Inc. v. Microsoft Corp.*, 508 F.3d 170, 180 (4th Cir. 2007). Just so. For these reasons, this Court should affirm.

## STATEMENT OF ISSUES

(1) Whether the district court correctly held that Plaintiffs did not adequately allege fraudulent concealment as a matter of law.

(2)    Whether the district court's decision should be affirmed on the additional ground that Plaintiffs concede they undertook no steps to investigate their claims in the decades since they accrued.

(3)    Whether the district court reasonably exercised its discretion in dismissing Plaintiffs' claims with prejudice when Plaintiffs neither moved for leave nor identified any new facts they would allege.

## STATEMENT OF THE CASE[1]

### A.    Defendants Build and Maintain the U.S. Public Fleet, with Typical Projects Involving Multiple Contractors and Subcontractors.

Defendant companies serve the U.S. Navy, Coast Guard, and other government entities in engineering "the most powerful military fleet in the world." JA041 ¶¶ 1–2. Defendants (collectively, for simplicity, referred to as the "Shipbuilders") include seventeen companies comprising (1) "shipbuilders that produce military vessels large and small," and (2) "specialized engineering 'consultancies'" that "help design, refit, and maintain nearly every ship in the U.S. fleet." JA041–42 ¶ 3.

---

[1] Because the district court correctly dismissed this action on the pleadings, this brief must assume the truth of Plaintiffs' factual allegations—but it does so for purposes of this appeal only.

Their construction and maintenance of the U.S. public fleet is essential to the military's operation. *See id.* ¶¶ 1–3; JA070 ¶¶ 127–128.

***Defendants.*** Nine Shipbuilders own and operate the "Big 5" private U.S. shipyards that build and service major warships pursuant to government contracts, as well as midsize shipyards that build smaller ships like patrol boats, naval tugboats, and naval transports. JA066–67 ¶¶ 116, 118.[2] Shipbuilders typically "do not design and build each piece of a ship in-house," but use "a host of subcontractors covering nearly every aspect" of the project, including specialized engineering consultancies. JA070 ¶ 129.

The other eight Shipbuilders are engineering consultancies focused on naval design and engineering.[3] They may contract directly with the U.S. government or be hired as subcontractors by major shipbuilders or

---

[2] Those Defendants are: General Dynamics Corporation, Bath Iron Works Corporation, Electric Boat Corporation, General Dynamics Information Technology, Inc., Huntington Ingalls Industries, Inc., Newport News Shipbuilding and Dry Dock Company, Ingalls Shipbuilding, Inc., Marinette Marine Corporation, and Bollinger Shipyards, LLC. JA049–52 ¶¶ 23–41; JA056 ¶¶ 59–60; JA057 ¶¶ 61–62; JA066–67 ¶ 116; JA070 ¶ 128.

[3] Those Defendants are: Gibbs & Cox, Inc., Serco, Inc., CACI International Inc., The Columbia Group, Inc., Thor Solutions, LLC, Tridentis, LLC, HII Mission Technologies Corp., and HII Fleet Support Group LLC. JA053–64 ¶¶ 42–58, 60–102; JA071 ¶ 130.

other engineering consultancies, working "in relationships ranging from co-equals to supervisors to subcontractors." JA072–73 ¶ 137.[4]

**_Plaintiffs._** Plaintiffs are two so-called "naval engineers," a term they coin to encompass workers with a wide range of specific titles and responsibilities—from "naval architects" who "design vessel hulls" and ensure vessels' "overall stability and performance," to "[m]arine engineers" who "design a wide array of onboard systems" and hold "specialty titles," such as "structural or electrical engineer." JA066–67 ¶ 116; JA068 ¶¶ 121–122. Plaintiffs allege that the Shipbuilders employ approximately 80% of naval engineers working on the U.S. public fleet, while the remaining 20% are employed by the U.S. government. JA070 ¶ 127. An unspecified number of naval engineers work on civilian vessels that are not part of the U.S. public fleet. JA066–67 ¶ 116.

Neither plaintiff has worked as a "naval engineer" in over a decade. Plaintiff Anthony D'Armiento allegedly worked as a naval architect for

---

[4] A final Defendant, Faststream Recruitment Ltd. ("Faststream"), is an international recruiting firm that Plaintiffs allege helped the other companies recruit naval engineers (despite the alleged existence of a "no-poach agreement"). JA042–43 ¶ 3; JA064 ¶ 103; JA080–81 ¶ 163. Faststream has not appeared in the district court or this Court, is not a signatory to this brief, and is not included in the term "Shipbuilders."

Northrop Grumman Ship Systems from 2002 to 2004. JA048 ¶ 20. Plaintiff Susan Scharpf allegedly worked for Alion Science & Technology Corporation as a naval architect from 2007 to 2009; for Computer Sciences Corporation as a naval marine engineer from 2009 to 2011; and for Gibbs & Cox, Inc., as a marine engineer from 2011 to 2013. *Id.* ¶ 19.

***Building the Public Fleet.*** Designing and constructing the public fleet requires coordination among a "host" of contractors and subcontractors. *See* JA070 ¶ 129. Shipbuilders typically submit joint bids for projects and "complete the work together if awarded the contract." JA085 ¶ 174.

To facilitate cooperation on a project, the Shipbuilders enter written contracts known as "teaming agreements" when they subcontract with one another or submit joint bids. JA046 ¶ 13; JA085 ¶ 174. Federal law recognizes that teaming arrangements "may be desirable from both a government and industry standpoint." 48 C.F.R. § 9.602(a). These teaming agreements contain explicit no-recruit provisions forbidding active recruitment of another's naval engineers for the duration of a given project. JA046 ¶ 13; JA085 ¶ 174. Plaintiffs do not challenge the legality

of the teaming agreements or the no-recruit provisions.  *See* JA085 ¶ 175 n.8.

## B.     Plaintiffs' Allegations of Conspiracy.

The crux of Plaintiffs' complaint is that the Shipbuilders have maintained an "informal 'gentlemen's agreement' among themselves not to recruit each other's  naval  engineers" that goes back to "at least 2000, and likely … to the 1980s."  JA044–45 ¶ 9.  The complaint contains no allegations detailing how the supposed "gentlemen's agreement" was formed or how additional Shipbuilders joined it.  JA079 ¶ 160 (alleging that the "origins" of agreement are "obscure").  There are no accounts, for example, of alleged phone calls, meetings, or discussions in which any Shipbuilder, let alone all of them, formed the supposed agreement.

Although the complaint repeatedly labels the Shipbuilders' alleged hiring practices as an "agreement" between them, the complaint actually describes supposed *unilateral* practices by individual Shipbuilders rather than any agreement among the Shipbuilders.  For example, Plaintiffs allege that one Shipbuilder maintained a "'do not hire' list" from which its "recruiters could not actively recruit."  JA042–43 ¶ 4; JA078 ¶ 155*; see*

*also* JA043–46 ¶¶ 7, 9, 12; JA075–77 ¶¶ 148, 150, 152 (allegations of "agreement" that describe individual internal practices).

The complaint also alleges that the Shipbuilders have good reason independently to decide not to recruit from their competitors and to enter into teaming arrangements that prohibit such recruiting. Per Plaintiffs, the industry has a "repeat-player dynamic" where companies "routinely work together" in "performing government contracts." JA072–73 ¶ 137. Shipbuilders "spend years developing trust and reputation among government customers and peer firms," JA082–83 ¶ 167; poaching could cause competitors not to "want to work with them," JA084 ¶ 171.

Finally, the complaint acknowledges that the Shipbuilders *do*, in fact, hire each other's naval engineers. Plaintiff Scharpf, for example, worked for three Shipbuilders in succession between 2007 and 2013. JA048 ¶ 19. The complaint also describes a web of exceptions to the supposed "gentlemen's agreement" (though Plaintiffs do not mention those exceptions in their brief before this Court). For example, the complaint alleges that Shipbuilders "hire[d] a competitor's employee if ... the employee affirmatively reached out." JA075–76 ¶ 148; *see also* JA044–45 ¶ 9; JA075 ¶ 146; JA077 ¶ 153; JA080 ¶ 161; JA081 ¶ 165.

Also, "[i]n some circumstances, a Defendant who lost a major contract would allow its employees to be recruited by the winner of the contract." JA077 ¶ 153.

### C. Plaintiffs Allege That Defendants Fraudulently Concealed Their Supposed "Gentlemen's Agreement."

Plaintiffs allege that their 2023 lawsuit is "not time-barred" despite their long-lapsed employment because the Shipbuilders "affirmatively concealed" their supposed "gentlemen's agreement." JA095 ¶ 204. Plaintiffs allege three grounds for tolling.

First, in a single sentence, Plaintiffs contend that the Shipbuilders concealed their agreement by "avoid[ing] putting anything in writing." JA096 ¶ 205. Notwithstanding that the complaint alleges the conspiracy has lasted for 40 years, the complaint contains no allegations describing with particularity (or even generality) where, when, or how that directive originated, or any supposed steps taken to carry it out. *See id.*

Second, nearly as briefly, the complaint alleges that teaming agreements encouraged and often required by the U.S. government included no-recruit provisions that the Shipbuilders used to cover up "their secret and much more expansive 'gentlemen's agreement.'" JA096 ¶ 207. Again, the complaint contains no allegations suggesting when or

how particular provisions were supposedly adopted for this purpose, and it does not allege any communications or other efforts by any Shipbuilder regarding a supposed cover-up.  And the complaint does not allege that Plaintiffs ever saw or knew about the teaming agreements or no-recruit provisions.  As noted above, Plaintiffs elsewhere acknowledge that the no-recruit provisions in teaming agreements serve legitimate purposes, JA046 ¶ 13; JA085 ¶ 174; JA082–83 ¶ 167; JA084 ¶ 171; and Plaintiffs do not here contend that those provisions or the teaming agreements are unlawful, JA085 ¶ 175 n.8; Br. 42 n.17.

Third, the complaint alleges that the Shipbuilders fraudulently concealed their supposed agreement by making generic statements, *e.g.*, on their websites or in their Codes of Conduct that they offer "competitive compensation," follow "ethical" standards, and "comply with the antitrust laws."  *See* JA096–100 ¶¶ 207, 210, 212–213, 215.

The complaint does not allege that Plaintiffs in any way investigated their claims in the years since they accrued.  *See* JA102–03 ¶¶ 222–26.  Plaintiffs allege they could not have known of their injury, but they also allege they knew they were not recruited and believe their non-recruitment was surprising.  *E.g.*, JA102 ¶¶ 223–24.  The complaint

does not explain how Plaintiffs ultimately learned of their claims before filing this suit in 2023.

### D. The District Court Dismisses Plaintiffs' Decades-Old Claims As Time-Barred.

Plaintiffs concede their claims accrued no later than 2004 and 2013, respectively, but they brought this action under Sherman Act Section 1 on October 6, 2023. The Sherman Act has a four-year statute of limitations. The Shipbuilders moved to dismiss the suit as time-barred.[5]

The district court agreed with the Shipbuilders and dismissed Plaintiffs' claims as time-barred. The court first recognized that Plaintiffs bear the burden of pleading fraudulent concealment and that their allegations must satisfy Rule 9(b)'s heightened particularity standard. JA357–58. Rule 9(b) directs that, though Plaintiffs may "partly rely on information and belief," they may not plead with generalized allegations. JA358 (quoting *Corder v. Antero Res. Corp.*, 57 F.4th 384, 402 (4th Cir. 2023)).

---

[5] The Shipbuilders also moved to dismiss for failure to state a claim. The district court did not reach those arguments under Rule 12(b)(6) after holding that the complaint was time-barred. *See* JA357 n.6.

The district court then recited this Circuit's test for pleading fraudulent concealment: The plaintiff must sufficiently allege that the defendants "[(1)] fraudulently concealed facts which are the basis of a claim, and that (2) [the plaintiff] failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987); *see* JA357. The court rejected Plaintiffs' tolling argument at the first step, finding that Plaintiffs did not plead any "affirmative acts" of concealment with particularity.

The district court comprehensively canvassed this Court's precedents on fraudulent concealment and concluded that "[t]he holdings and pronouncements in *Pocahontas*, *Marlinton*, *Boland* and *Robertson*, and *Edmonson* require a rejection" of Plaintiffs' claims. JA361. The court explained that Plaintiffs' allegations that the Shipbuilders maintained a "secret" "unwritten" agreement "fare no better than [ones] in *Boland* and *Robertson*," where the plaintiffs had alleged that "defendants (1) met secretly, (2) gave pretextual reasons for real estate costs, and (3) agreed to keep secret the nature of their communications to conceal their illegal agreement." *Id.* Like those allegations, the allegations here amount to a

"failure[] to admit wrongdoing, and as such, are insufficient to plead affirmative acts under Rule 9(b)." JA363.

The district court also rejected Plaintiffs' allegations about the Shipbuilders' generalized value statements—posted on their websites, printed in their Codes of Conduct, and the like—representing that they offer "'competitive' compensation" and abide by antitrust laws; those statements are likewise insufficient as a matter of Circuit law to establish tolling. JA360–61. Quoting the Fourth Circuit's decision in *Marlinton*, the district court noted, "it is not enough to allege that 'the defendants ... lied' upon 'general inquiry.'" *Id.* (quoting 71 F.3d at 123). And "[h]ere, the allegations are that Defendants simply failed to admit or disclose their conspiracy without *any* inquiry of them at all." *Id.*

That left Plaintiffs with only their argument that the teaming agreements' no-recruit provisions are "shams." JA363. Applying Circuit law, the district court dispensed with this argument. The court contrasted the concededly "lawful[ ]" provisions here—which, as pled, "plainly serve the presumably valid purpose of prohibiting solicitation for the duration of a teaming agreement"—with the wholly "sham" entities and instruments in *Edmonson*, which existed "'for the *sole* purpose'" of

laundering kickbacks. JA363–64 (quoting *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 542 (4th Cir. 2019)).

Because the district court held that Plaintiffs did not plead facts sufficient to support any "affirmative act[]" of fraudulent concealment, the court did not reach the independent issue of whether Plaintiffs exercised due diligence in pursuing their time-barred claims. JA364 n.13. The court dismissed Plaintiffs' claims with prejudice and entered judgment in favor of the Shipbuilders. JA364.

Plaintiffs never moved for leave to amend, including after judgment (*i.e.*, by motion for reconsideration or vacatur under Rule 59(e) or 60(b)), and they never identified allegations they would add were they granted leave. This appeal followed.

## SUMMARY OF ARGUMENT

**I.A.** An unbroken line of Circuit case law, from *Pocahontas* to *Robertson*, holds that merely alleging an illicit agreement that is secret, unrecorded, or otherwise not disclosed is insufficient to establish tolling based on fraudulent concealment. Under that precedent, Plaintiffs' bare allegation that the Shipbuilders' "gentlemen's agreement" was secret and unwritten fails. Like allegations that defendants met secretly or agreed not to discuss their plans, an allegation that the Shipbuilders did not put their agreement in ink evinces only a failure to admit wrongdoing, not an affirmative act under this Court's test. Moreover, Plaintiffs' allegations lack the particularity Rule 9(b) demands. Plaintiffs nowhere allege who directed the agreement be unwritten, or when, how, or by whom that supposed directive was carried out. As this Court has recognized, if such summary allegations sufficed, the statute of limitations would be a dead letter.

Plaintiffs' sudden reliance on this Court's decision in *Marlinton* goes nowhere. *Marlinton* merely adopted the "affirmative acts" test, which the majority of courts nationwide apply (and which the district court here likewise correctly applied). *Marlinton* did not purport to pass

on whether a standalone allegation of an unwritten agreement is legally sufficient to meet that test, let alone whether such an allegation is sufficient to satisfy Rule 9(b).  Cases both before and after confirm it is not.

**B.**    Plaintiffs' additional tolling argument relies on the existence of no-recruit provisions in teaming agreements, which Plaintiffs do not challenge as illegal, and affirmatively allege serve useful purposes in the industry.   Plaintiffs' precedents feature true sham agreements that involved elaborate shell entities and faux contracts lacking any legitimate purpose, alleged to have been created solely to conceal a conspiracy.   This case is nothing like that.   Moreover, Plaintiffs' allegations do not satisfy Rule 9(b)'s heightened pleading standard.  And Plaintiffs nowhere suggest that they ever saw, knew of, or were misled by any teaming agreements or no-recruit provisions.  Plaintiffs cannot plausibly allege they were delayed in suing by something of which they were unaware.

**C.**    In the district court, Plaintiffs pressed a third ground for tolling:  that Defendants made general representations in various documents and on their websites that they "offer 'competitive'

compensation"; adhere to "core values" like "transparency, honesty, and integrity"; and "comply with the antitrust laws." On appeal, Plaintiffs do not even attempt to rebut the district court's rejection of these allegations as legally insufficient to establish fraudulent concealment. In any event, to the extent Plaintiffs seek to rely on these allegations, they are a dead end. Case after case holds that such allegations do not justify tolling.

**II.A.** Plaintiffs are not entitled to tolling for an independent reason: They have not alleged that they exercised due diligence—or indeed *any* diligence—in investigating their claims during the intervening decade or more since those claims accrued. Plaintiffs suggest they had no reason to investigate, but their own complaint shows otherwise. Not only do Plaintiffs say they knew *they* were not recruited, but they also allege it was industry knowledge that naval engineers supposedly got recruited less often than other engineers. Moreover, Plaintiffs allege that the alleged agreement not to recruit was known to many in the field, including hiring personnel and other employees. Courts have consistently held that such allegations put plaintiffs on inquiry notice and obligate them to investigate their claims. Plaintiffs here concede they did nothing, which is insufficient as a matter of law.

**B.** Nor do Plaintiffs explain how they ultimately came to learn of their decades-old claims in April 2023 before filing this case—yet another Circuit requirement to establish due diligence. That supplies an additional, independent basis to affirm.

**III.** Plaintiffs contend that the district court abused its discretion in dismissing without granting them leave to amend. Circuit law, which Plaintiffs fail to cite, holds that dismissal without leave to amend is appropriate where the plaintiff has failed either (1) to file a motion to seek leave to amend; or (2) to inform the district court of the additional allegations they would make if granted leave. Plaintiffs did neither. The district court did not abuse its discretion by dismissing with prejudice.

## STANDARD OF REVIEW

The Court reviews an order granting a motion to dismiss *de novo*. *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 545 (4th Cir. 2019). It reviews the district court's denial of leave to amend for abuse of discretion. *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014).

# ARGUMENT

## I. The District Court Correctly Held That Plaintiffs' Fraudulent Concealment Allegations Fail As a Matter of Law.

### A. The District Court Correctly Held That Plaintiffs' Allegation That Defendants' Agreement Was "Secret" and "Unwritten" Is Insufficient to Justify Tolling.

Plaintiffs' primary basis for tolling is their bare allegation that the Shipbuilders maintained a "secret" "unwritten" agreement. *See* Br. 7, 16; JA045–46 ¶ 12; JA095–96 ¶¶ 204–206. As the district court held, that conclusory allegation is insufficient under the law of this Circuit and courts across the country. Plaintiffs do not cite a *single* case holding that a plaintiff establishes fraudulent concealment by pleading that the defendants' agreement was unrecorded. Every court that has addressed similar allegations has held they fail.

#### 1. *Circuit Precedent Forecloses Plaintiffs' Arguments.*

a. Plaintiffs must satisfy two interrelated requirements to allege fraudulent concealment.

First, Plaintiffs must allege "affirmative acts" of concealment—*i.e.*, a "trick or contrivance." *Edmonson*, 922 F.3d at 553. This Court has held that standard is satisfied, for example, by allegations that the defendants

created "'sham entities'" or used "'back-dated' agreements" to hide illicit conduct. *Id.* (quotation omitted). By contrast, allegations that the defendants met secretly or arranged not to publicly discuss their supposed agreement are not "affirmative acts"; they amount to a "failure to admit to wrongdoing," which is insufficient to justify tolling. *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 n.2 (4th Cir. 2012) (quotation omitted); *see also GO Comput., Inc. v. Microsoft Corp.*, 437 F. Supp. 2d 497, 500 (D. Md. 2006), *aff'd*, 508 F.3d 170 (4th Cir. 2007). As this Court has explained, permitting tolling based on allegations of mere secrecy "would effectively nullify the statute of limitations," as these features are present in virtually every case with claims of price-fixing. *Pocahontas*, 828 F.2d at 218–19.

Second, Plaintiffs must allege the "affirmative acts" with particularity, per Rule 9(b). Rule 9(b) mandates that Plaintiffs "must plead the time, place, and contents" of the affirmative acts of concealment as well as "the identity of the person" undertaking those acts. *Edmonson*, 922 F.3d 553 (quotations omitted). Plaintiffs may make some of these allegations "[up]on information and belief," but they are not excused from Rule 9(b)'s "particularity requirement." *Corder v. Antero Res. Corp.*, 57

F.4th 384, 402 (4th Cir. 2023) (quotation omitted). That means Plaintiffs must set forth specific allegations regarding the precise "means and methods" the Defendants supposedly employed to carry out their affirmative acts of fraudulent concealment. *Boland v. Consol. Multiple Listing Serv., Inc.*, 868 F. Supp. 2d 506, 517–18 (D.S.C. 2011), *aff'd sub nom. Robertson*, 679 F.3d 278.

**b.** These dual obligations to plead affirmative acts and to do so with particularity foreclose Plaintiffs' tolling arguments. Plaintiffs' mere allegation that the Shipbuilders did not write down their agreement to keep it secret is not an affirmative act of concealment, let alone one pled with particularity. Plaintiffs provide no specifics about who gave any such instruction, or when, how, or by whom that supposed directive was carried out over the many years for which Plaintiffs seek tolling.

*Robertson,* this Court's most recent decision addressing allegations of secret collusion is directly on point. There, the plaintiffs alleged a horizontal price-fixing conspiracy and sought to toll the statute of limitations for three years,[6] based on allegations that the defendants

---

[6] The complaint in *Robertson* alleged that the conspiracy began in 2003, that the plaintiffs could not have known of their claims until DOJ filed its own complaint in 2007, and that plaintiffs' 2010 complaint should be

"used means and methods" to "conceal[ ]" the agreement such as "meeting secretly," "giving pretextual reasons" for high prices, and "agreeing [at meetings] not to discuss publicly the nature of their communications in furtherance of their illegal scheme." *Boland*, 868 F. Supp. 2d at 518.

This Court held that those allegations fell short. Citing binding precedents, it held that the district court "properly concluded that plaintiffs did not 'allege affirmative acts of concealment or affirmative steps to mislead' and that 'plaintiffs' allegations amount[ed] to no more than a failure to admit to wrongdoing, which does not suffice.'" *Robertson*, 679 F.3d at 291 n.2 (quoting *Pocahontas*, 828 F.2d at 218–19).

*Robertson* forecloses Plaintiffs' argument on appeal. As Judge Trenga recognized, allegations here that the Shipbuilders maintained a "secret" "unwritten" agreement are equivalent to *Robertson*'s allegations that defendants "met secretly" and agreed not to publicly discuss "the nature of their communications to conceal their illegal agreement." JA361–62. Neither pleads an affirmative act, but rather a mere "failure[] to admit wrongdoing." JA363; *cf. CSX Transp., Inc. v. Norfolk S. Ry. Co.*,

---

deemed timely notwithstanding the expiration of the four-year limitations period in 2007.

--- F.4th ----, 2024 WL 3974989, at *7 (4th Cir. Aug. 29, 2024) ("At bottom then, mere silence or inaction from a defendant—even though the allegedly unlawful conspiracy … remains in effect—isn't enough to restart the limitations period. Instead, an affirmative act … is required.").

Plaintiffs have no answer to *Robertson*. They strain to distinguish it by claiming that the plaintiffs there did not allege that the defendants "culpably s[ought] to conceal their agreement." Br. 37 (emphasis omitted). But that is precisely what the plaintiffs there pled: that the "defendants fraudulently concealed their illegal conduct." *Robertson*, 679 F.3d at 291 n.2.

Plaintiffs then suggest that *Robertson* merely held that the allegations there lacked necessary "additional details substantiating [the] conclusory concealment allegations" to satisfy Rule 9(b). Br. 37. That is doubly wrong. This Court held that the plaintiffs in *Robertson* did not "allege affirmative acts of concealment" and alleged "no more than a failure to admit to wrongdoing." 679 F.3d at 291 n.2 (quoting *Pocahontas*, 828 F.2d at 218–19). The Court did not hold, as Plaintiffs would have it, that the "case would have come out the other way" had the

plaintiffs provided more detail. Br. 37. It held that the plaintiffs' allegations categorically did not qualify as "affirmative acts" of concealment.[7]

In any case, Plaintiffs here have offered no more "particularity" than did the *Robertson* plaintiffs. Plaintiffs' brief boasts about "a level of detail that is virtually unheard of in major antitrust conspiracy cases." Br. 4. But their complaint supplies *zero* specifics about any concealment, whether from a "confidential" source, or even upon information and belief.[8] Instead, the complaint repeats over and over various formulations of the same conclusory allegation that the Shipbuilders did

---

[7] Plaintiffs seek to minimize *Robertson* by noting that this Court affirmed the district court "in a single footnote." Br. 36. But that brevity reflects that the analysis in *Boland* was entirely—and unremarkably—correct under Fourth Circuit precedent and cases from other courts nationwide.

[8] Plaintiffs' complaint contains a passing allegation that the Shipbuilders used "euphemisms and code words" to conceal their supposed conspiracy. JA097–98 ¶ 209. Plaintiffs' brief does not develop any argument based on this allegation, and for good reason. Plaintiffs' "code word" allegation is that unidentified Shipbuilders referred to each other as "friends" and said that they "had a relationship" with each other when speaking to unidentified recruiters. JA045–46 ¶ 12. Not only is that allegation missing the specifics Rule 9(b) requires, but also the complaint elsewhere alleges that the Shipbuilders *did* have "close and repeated working relationships" that *were* the product of "years developing trust and reputation." JA084 ¶ 171; *see also* JA082–83 ¶ 167. Plaintiffs' own allegations thus demonstrate that these terms were not code words at all.

not put their agreement in writing.  *See* JA041 ¶ 1; JA045–46 ¶ 12; JA076 ¶ 149;  JA095–96  ¶¶ 204–06).    Redundancy  is  not  particularity.  Plaintiffs' allegations are inadequate to justify tolling under Rule 9(b), just as the allegations in *Robertson* were.

**c.**    Nor was *Robertson* a bolt from the blue.  It drew upon this Court's earlier decision in *Pocahontas*, which applied the same rule and likewise forecloses Plaintiffs' arguments.  *See* 828 F.2d at 218–19.

*Pocahontas* also involved allegations of an antitrust conspiracy where the plaintiffs asserted fraudulent concealment based on the supposed secrecy of the price-fixing agreement.  *Id.* at 214–15, 217–18.  The plaintiffs alleged that they had asked a defendant why it refused to accept certain coal deliveries and why the price paid for coal was so low.  *Id.* at 218.  "Instead of responding that the pricing and delivery policies were the result of concerted, illegal antitrust activity, [the defendant] responded that the delivery quotas were due to a railroad strike … and that the pricing simply was the maximum allowable."  *Id.*

This Court held that the plaintiffs' argument that the defendant's false  response  constituted  fraudulent  concealment  "border[ed]  on sophistry."  *Id.*  "To permit a claim of fraudulent concealment to rest on

no more than an alleged failure to own up to illegal conduct … would effectively nullify the statute of limitations in these cases." *Id.* at 218–19. After all, "[i]t can hardly be imagined that illegal activities would ever be so gratuitously revealed." *Id.* at 219. Hence, to give the statute of limitations teeth, this Court insisted that fraudulent concealment must "impl[y] conduct more affirmatively directed at deflecting litigation." *Id.*

As the district court here recognized, Plaintiffs' position cannot be squared with *Pocahontas*. *See* JA361. *Pocahontas* holds that alleging the defendant did not acknowledge wrongdoing upon questioning is insufficient for tolling. Yet "[h]ere, the allegations are that Defendants simply failed to admit or disclose their conspiracy without *any* inquiry of them at all." *Id.* Those allegations are *a fortiori* insufficient under *Pocahontas*.

Again, Plaintiffs strain to distinguish binding precedent. They insist that "Defendants' actions here unquestionably support an inference of *intentional*, *wrongful* concealment, whereas in *Pocahontas* the allegedly concealing answers did not, as pled, support such an inference." Br. 34. *Pocahontas* holds precisely the opposite. The Court

accepted plaintiffs' allegation that the defendants gave "false" answers rather than admit their wrongdoing, but held that was legally insufficient. JA361. Here, the alleged decision not to write down an agreement is even further afield from affirmative concealment.

    **d.** This Court's unbroken line from *Pocahontas* to *Robertson* extends through other cases both in this Circuit and across the country.

    For example, in another major antitrust case in this Circuit, the plaintiffs alleged that the defendants had conducted their conspiracy at "secret meetings" and given "pretextual reasons" for their supposedly illegal conduct. *SD3, LLC v. Black & Decker (U.S.), Inc.*, 215 F. Supp. 3d 486, 495–97 (E.D. Va. 2016), *aff'd sub nom. SD3 II LLC v. Black & Decker (U.S.) Inc.*, 888 F.3d 98 (4th Cir. 2018). Judge Hilton held those allegations were insufficient as a matter of law. As to the allegation of secret meetings, the court held that those failed because "secret communications equates to silence but is not enough to show fraudulent concealment." *Id.* at 497 (citing *Rx.com v. Medco Health Sols., Inc.*, 322 F. App'x. 394, 397–98 (5th Cir. 2009)). The court likewise held that the allegations of pretextual answers were insufficient because they amounted "to no more than a failure to admit wrongdoing, which does

not suffice to establish fraudulent concealment." *Id.* (citing *Boland*, 868 F. Supp. 2d at 518); *accord CSX Transp.*, 2024 WL 3974989, at *6 ("[O]ur precedent hold[s] … that a defendant's 'silence' … doesn't qualify as an act sufficient to extend the statute of limitations." (quoting *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 573 (4th Cir. 1976))).

The rule is identical outside the Fourth Circuit. For example, in *In re Animation Workers Antitrust Litigation*, the court held that allegations that defendants "engaged in a secret conspiracy" and "avoided memorializing the scheme in writing" were "insufficient" allegations of "passive[] conceal[ment]." 87 F. Supp. 3d 1195, 1215–17 (N.D. Cal. 2015) ("*Animation Workers I*"). As that court put it, "[i]f the mere fact of a secret conspiracy were sufficient to toll the statute of limitations under the fraudulent concealment doctrine, there would be little point in imposing a period of limitation in the first instance." *Id.* at 1216.

Many other courts have held similar allegations insufficient. *See, e.g.*, *Towers v. Iger*, 2017 WL 6044035, at *11 (N.D. Cal. Mar. 10, 2017) (allegations that defendants maintained "secretive" "'gentlemen's agreements' ... that were intended to be shared orally rather than written

31

down" were "insufficient"); *see also Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 891–93 (N.D. Cal. 2015) ("allegations of efforts to keep the conspiracy secret by avoiding disseminating information" were insufficient); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 988 F. Supp. 2d 696, 723–24 (E.D. La. 2013) ("conclusory" allegations that defendants "engaged in secret meetings and communications" were insufficient); *In re Refrigerant Compressors Antitrust Litig.*, 795 F. Supp. 2d 647, 663–64 (E.D. Mich. 2011) ("allegations regarding Defendants' secret or clandestine meetings" and agreement "not to record the clandestine meetings" were "insufficient").

### 2. *Plaintiffs' Arguments to the Contrary Fail.*

Facing a wall of adverse precedent, Plaintiffs chiefly respond that the district court's decision runs afoul of *Marlinton*, a decision from this Court. Having barely mentioned *Marlinton* in their briefing below, Plaintiffs now devote twenty pages to it in this Court. Br. 14–34. Plaintiffs' sudden embrace of *Marlinton*, however, is for naught.

**a.** To begin, *Marlinton* did not address whether any particular allegations—let alone a bare allegation of an unwritten agreement—establish fraudulent concealment under either limitations law or Rule

9(b).  71 F.3d at 123–24.  Instead, the Court addressed the legal standard that governs in fraudulent concealment cases.  *Id.* at 122–26.  The Court held that the "affirmative acts" test applies: *i.e.*, that the plaintiff must allege affirmative acts of concealment, regardless of whether those acts are "separate" from the antitrust violation itself.  *Id.* at 126.  That is the sole question *Marlinton* purported to answer.

*Marlinton*'s "affirmative acts" standard connects *Robertson* and *Pocahontas*.  *Robertson* applied *Marlinton*'s "affirmative acts" test to hold allegations that a supposed price-fixing conspiracy was kept "secret," via undisclosed meetings and agreements not to discuss or record the arrangement, fail as a matter of law.  868 F. Supp. 2d at 517–18 (citing *Marlinton*, 71 F.3d at 218).  And *Marlinton* was careful to reaffirm *Pocahontas*, explaining that the "intermediate, affirmative acts" standard is "consistent with *Pocahontas*" and that case's holding that lying about a secret conspiracy does not suffice.  71 F.3d at 125; *see also id.* at 123–24 (rejecting alternative standards as inconsistent with or unsupported by *Pocahontas*).[9]  To that end, courts nationwide have

---

[9] Plaintiffs argue that "*Pocahontas* should not really be read as touching the 'affirmative acts' standard at all" because it "predated *Marlinton* and conflated the plaintiff's lack of diligence with the defendant's actions."

applied the same affirmative acts standard to hold comparable allegations of "secret" agreements failed. *See, e.g.*, *Animation Workers I*, 87 F. Supp. 3d at 1214–15 (applying affirmative acts standard); *Pool Prods. Distrib. Mkt. Antitrust Litig.*, 988 F. Supp. 2d at 723–24 (same); *Refrigerant Compressors Antitrust Litig.*, 795 F. Supp. 2d at 663–64 (same).

**b.** *Pocahontas*, *Marlinton*, *Robertson*, and the other authority on this issue speak with one voice—and the district court echoed their uniform rule. Plaintiffs argue otherwise by suggesting that the district court "effectively applied" the wrong standard, the "separate and apart" test that *Marlinton* rejected. Br. 24.

Plaintiffs' real quarrel, however, lies not with the district court but with the precedents canvassed above that compel its holding. As the district court explained, applying those precedents, Plaintiffs' allegations

---

Br. 32. Neither claim is correct. For one, again, *Marlinton* explained that it reached its result to be "consistent with *Pocahontas*" and because another approach "would be inconsistent with *Pocahontas*." 71 F.3d at 123–25. For another, *Pocahontas* did not conflate these points—only Plaintiffs do. The Court was crystal clear that the *Pocahontas* plaintiffs had failed to adequately allege *either* "[f]raudulent concealment" *or* "due diligence," and made distinct holdings as to each. 828 F.2d at 218–19 (quotations omitted).

amount to nothing more than an assertion of a secret agreement, which is not an affirmative act of concealment. The district court did not require Plaintiffs to allege fraudulent conduct "separate and apart" from the alleged antitrust violation; rather, it simply and only required them to allege with particularity "affirmative acts" of concealment beyond the bare fact of secrecy.

Likewise unavailing is Plaintiffs' reference to a line in *Marlinton* suggesting that fraudulent concealment could apply where "conspirators are careful not to write down evidence of their antitrust violations in the first place." 71 F.3d at 125. That line of dicta does not mean that a bare allegation that an agreement was kept "secret" and "unwritten" meets the fraudulent concealment test or Rule 9(b). *Marlinton* did not purport to hold that mere allegation of an unwritten agreement is sufficient to justify tolling or to overturn *Pocahontas*. Indeed, were it otherwise, *Robertson* would have come out the other way. Moreover, because *Marlinton* did not address the question of what allegations are enough to state a claim, it did not say a word about the application of Rule 9(b)'s requirement of pleading with particularity. *See supra* Section I(A)(2)(a).

**c.** The only other Circuit authority that Plaintiffs invoke is *Edmonson*, which they claim "sits poorly" with the district court's decision. Br. 24. Not so. The allegations in *Edmonson* are miles from those here and highlight the inadequacy of Plaintiffs' complaint.

In *Edmonson*, the plaintiffs alleged an elaborate scheme among several banks and mortgage companies to provide referrals in exchange for illegal kickbacks. 922 F.3d at 541. The defendants did not simply keep their agreement unwritten or refuse to disclose it—they concealed their scheme through numerous affirmative acts, such as "creat[ing] and us[ing] 'sham' entities to channel" the allegedly unlawful "kickbacks," "enter[ing] into 'sham'" services agreements to serve as a cover for the payments, and "'back-dat[ing]' those agreements to further disguise the kickback scheme." *Id.* at 553. Plaintiffs enumerated "the names of the sham entities, the broker or loan officer connected to each sham entity, and the dates [one of the defendants] allegedly funneled kickback payments through the entities." *Id.* Not surprisingly, this Court found these "tricks [and] contrivances" constituted affirmative acts "employed to conceal the alleged unlawful … scheme." *Id.* at 553–54 (quotation omitted and alterations adopted).

But the allegations in *Edmonson* have no relationship to the sparse allegations here. As noted above, Plaintiffs' complaint is bereft of any allegation of who, if anyone, instructed the Shipbuilders' supposed agreement to be unwritten, and when or how any such instruction was made, enforced, or carried out.

*Jien v. Perdue Farms, Inc.*, 2020 WL 5544183 (D. Md. 2020), which Plaintiffs mention in passing, Br. 15, is likewise of little help. Plaintiffs suggest that the case holds that allegations of secret, in-person meetings are sufficient for fraudulent concealment. But Plaintiffs' complaint contains no such allegations. And Plaintiffs omit the other allegations in *Jien*, including that the defendants actively manipulated data to hide their agreement, imposed rules to keep the meetings undisclosed, and threatened penalties against anyone who divulged their scheme. 2020 WL 5544183 at *13. Presumably Plaintiffs leave out these particularities because they recognize their complaint contains none, so cannot pass muster even under Plaintiffs' cherry-picked citations.

## B. The District Court Correctly Held That Plaintiffs' "Sham" Allegations Are Insufficient.

Plaintiffs alternatively seek tolling based on alleged "teaming agreements" between the Shipbuilders. Plaintiffs' complaint, like their

brief, nowhere contends that these agreements, or the no-recruit provisions therein, are illegal or illegitimate. To the contrary, Plaintiffs affirmatively plead that teaming serves a productive function in the context of the Shipbuilders' routine collective work on projects at the behest of the government. Still, Plaintiffs insist that these agreements and provisions functioned as "shams" designed to mislead people into believing there were no other restrictions on solicitation. *See* Br. 40–44. That argument fails for multiple reasons, as the district court recognized.

1. ***Teaming Agreements Encouraged by the Government and Not Challenged by Plaintiffs Are Not Shams.***

First and fundamentally, Plaintiffs' sham argument fails because Plaintiffs do not dispute that the teaming agreements and their no-recruit provisions are lawful. *See* JA085 ¶ 175 n.8. And Plaintiffs do not dispute that the provisions serve a *pro*competitive purpose independent of the alleged conspiracy. *Id.* Nor could they. The federal government encourages, and sometimes even requires, teaming agreements to carry out major government contracts. *See, e.g.*, 48 C.F.R. § 9.602(a); National Defense Authorization Act for Fiscal Year 1998, Pub. L. No. 105-85, § 121(b), 111 Stat. 1629, 1648 (1997) (conditioning the appropriation of

submarine funding on the adoption of a particular teaming agreement). As the complaint acknowledges, teaming agreements and no-recruit provisions serve military objectives in building and maintaining the public fleet because these large and complex vessels typically require multiple companies serving as contractors and subcontractors. *See supra* pp. 9–10.

These government-approved agreements are the opposite of a "sham" under Fourth Circuit law, as the district court held. JA363 (holding the non-solicitation provisions "have none of the features of the 'sham' entities and instruments in *Edmonson*"). The case law Plaintiffs cite finds "shams," for instance, where the defendants allegedly created fake corporate entities or contracts that served no legitimate purpose whatsoever; rather, those entities or contracts were created and used "for the sole purpose" of serving as a front to cover up the conspiracy. *See Edmonson,* 922 F.3d at 542, 553–54; *see also Donaldson v. Primary Residential Mortg., Inc.*, 2020 WL 3184089, at *21 (D. Md. June 12, 2020); *Ekstrom v. Cong. Bank*, 2020 WL 6565251, at *14 (D. Md. Nov. 9, 2020). Here, by contrast, the government encourages such agreements because

they are critical to ensuring the success of complex projects on which the national security relies.

Plaintiffs respond that even if the no-recruit provisions are "legitimate," Plaintiffs can still maintain that the legitimate provisions served to mislead. Br. 44. But Plaintiffs cannot have it both ways. If Plaintiffs contend that no-recruit provisions were placed in teaming agreements as a smokescreen for the broader conspiracy they allege, then they would have to argue that those provisions were illegitimate. Not only do Plaintiffs decline to make that argument, but also, as discussed, their complaint affirmatively alleges that those provisions serve a *beneficial* purpose by facilitating cooperation and allowing companies to "complete the work together" "when working on the same project." JA085 ¶ 174; *see also* JA046 ¶ 13. That means they cannot, by law, be the basis for fraudulent concealment.[10]

---

[10] Plaintiffs harp on the district court's statement that the no-recruit provisions have a "presumably valid purpose" as suggesting that the district court improperly drew inferences in favor of the Shipbuilders. *See* Br. 10, 13, 40–44. Not so. The district court was merely observing that Plaintiffs' themselves had pled that the no-recruit provisions were "credibly defensible project-based limitations." JA363–64; *see also* JA072–73 ¶ 137 (describing industry's need to collaborate); JA084 ¶ 171 (describing "repeat-player working relationships"); JA085–86 ¶ 174 (describing purpose of teaming agreements).

## 2. *Plaintiffs' Sham Allegations Do Not Satisfy Rule 9(b).*

Even if the teaming provisions could be shams under this Court's precedents, Plaintiffs do not meet their burden under Rule 9(b) to plead particularized facts demonstrating "who, what, when, where, and how" they or the no-recruit provisions supposedly concealed the alleged unwritten agreement. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). The complaint generically alleges nothing more than that the agreements "misled Plaintiffs … into thinking they could be recruited whenever they were not working on the same project as a rival." Br. 41 (citing JA096 ¶ 206).

Plaintiffs do not plead *any* specifics about the teaming agreements or no-recruit provisions serving as a "sham." For example, Plaintiffs identify no communication between any Shipbuilders proposing to include no-recruit provisions as a smokescreen. In fact, the complaint does not even "allege which Defendants entered the teaming agreements containing "no-hire clauses," JA363 n.11, who was covered by the provisions and when, whether there were any exceptions, or how long the provisions or the agreements were in force. Those particulars are especially important in this case because even by Plaintiffs' own lights,

teaming served a useful pro-competitive function, and thus Plaintiffs must provide the who, what, where, and when of how the agreements were supposedly used as a fraud.

Those deficiencies distinguish this case from *Edmonson*, where, as noted, the plaintiffs pled extensive details about how the defendants "created and used 'sham' entities" and "sham, 'back dated' agreements to conceal the scheme." JA360 (quoting *Edmonson*, 922 F.3d at 553–54). The *Edmonson* plaintiffs provided many details about inherently fraudulent conduct. Plaintiffs here have provided *no* such details about inherently *legitimate* conduct. That is why, as Judge Trenga correctly concluded, Plaintiffs' "conclusory claim thus fails," JA363 n.14, and their allegations are "insufficient to plead fraudulent concealment at the motion to dismiss stage," JA361.

### 3. *Plaintiffs Do Not Allege That They Were Even Aware of Teaming Agreements, Let Alone Deceived by Them.*

Finally, Plaintiffs' failure to allege that they ever knew about the teaming agreements or no-recruit provisions independently disqualifies them as a basis for tolling. As the district court noted, Plaintiffs do not plead any facts indicating they "were even aware of such agreements

when working for certain Defendants between 2002 and 2013," any facts "as to how the Plaintiffs were misled," or any facts demonstrating that "these Plaintiffs were 'diverted away' from litigation" by the agreements. JA363–64 & n.1. As the district court correctly concluded, Plaintiffs cannot claim that they were misled by something of which they were unaware. JA363–64 & n.11.

As this Court noted in *Edmonson*, "the fraudulent concealment tolling doctrine applies in situations where the defendant has wrongfully deceived or misled *the plaintiff* in order to conceal the existence of a cause of action." 922 F.3d at 549 (quotation omitted and emphasis added). As the district court observed, this legal test demands a causal connection between the alleged fraudulent concealment and the plaintiff's failure to discover the facts giving rise to his or her claim within the statute of limitations. JA364 n.12.

That requirement is well-settled. As one court in this Circuit put it, "fraudulent concealment … fails as a matter of law [where the plaintiff] … did not rely on Defendants' statements." *SD3*, 215 F. Supp. 3d at 497. Other courts have likewise required the alleged concealment to "prevent [*the plaintiff*] from discovering [the] wrongdoing during the

43

limitations period[.]" *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 910 (6th Cir. 2010) (emphasis added).[11] Here, Plaintiffs not only fail to allege that they relied on the teaming agreements or no-recruit provisions in declining to bring suit for over a decade, but also do not suggest that they knew about those agreements or provisions prior to filing this suit.

Plaintiffs dispute that they should have to allege that they were aware of the teaming agreements. Br. 45–47. But Plaintiffs have chosen to advance an argument that the existence of the no-poach provisions in teaming agreements misled them into believing that there were otherwise no constraints on recruitment. *See id.* at 41. They have thus elected to pursue a litigation strategy that—by law as well as logic—requires them to connect the dots to prevail on their argument. Absent exposure to the alleged acts of concealment (the "sham" agreements), this allegedly "wrongful conduct" could not have "prevent[ed]" *Plaintiffs* "from learning of the facts necessary to assert a claim within the limitations period." *See Edmonson*, 922 F.3d at 551.

---

[11] *See also Roy v. Bank of N.Y. Mellon*, 2018 WL 3912281, at *6 (E.D.N.Y. Aug. 14, 2018); *McAnaney v. Astoria Fin. Corp.*, 2007 WL 2702348, at *10 (E.D.N.Y. Sept. 12, 2007); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 487, 490 (C.D. Cal. 1991).

**C. The District Court Correctly Held That Plaintiffs' Allegations That Defendants Made Generic Statements Are Insufficient As a Matter of Law.**

In the district court, Plaintiffs made an additional argument for tolling. They alleged the Shipbuilders concealed their supposed conspiracy by making general representations in recruiting documents, in Codes of Conduct, and on their websites that they "offer 'competitive' compensation"; adhere to "core values" like "transparency, honesty, and integrity"; and "comply with the antitrust laws." JA096–99 ¶¶ 207, 209–14. Plaintiffs appear to have backed away from these allegations on appeal, so any argument relying on them is forfeited. *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021).

In any event, the argument is meritless. As the district court held, these allegations are nothing more than the disclaimers of an illegal agreement that this Court held were inadequate in *Pocahontas*.[12] JA361. Numerous other courts have likewise held that general statements in corporate filings and the like do not constitute "affirmative acts" of

---

[12] Furthermore, almost all of the representations Plaintiffs plead are from 2021 or later. *See* JA096–101 ¶¶ 207–17. The alleged statements thus come too late to help Plaintiffs and could not have "prevent[ed] [them] from discovering" the conspiracy "during the limitations period." *Ruth*, 604 F.3d at 910–11.

fraudulent concealment. *See, e.g.*, *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1078 (N.D. Cal. 2016); *Ryan*, 147 F. Supp. 3d at 892; *In re Merrill, Bofa, & Morgan Stanley Spoofing Litig.*, 2021 WL 827190, at *9 (S.D.N.Y. Mar. 4, 2021). Plaintiffs have no rejoinder.[13]

\* \* \*

Plaintiffs were last employed in this industry in 2004 and 2013. The decade or more of tolling they seek demands particular allegations of affirmative acts of fraudulent concealment. Plaintiffs' barebones allegation here of a "secret," "unwritten" agreement does not meet that

---

[13] In a footnote, Plaintiffs suggest that this Court could "modify" its "treatment of the Clayton Act's statute of limitations to use a 'discovery rule' rather than an 'injury rule.'" Br. 27–28 n.10. When Plaintiffs say "modify," they actually mean overrule this Court's binding precedent, which has rejected a discovery rule. *See, e.g.*, *Mayor of Balt. v. Actelion Pharms. Ltd.*, 995 F.3d 123, 130–31 (4th Cir. 2021) ("plaintiffs' cause of action … accrued when they were injured"); *Pocahontas*, 828 F.2d at 217–18; *see also Detrick v. Panalpina, Inc.,* 108 F.3d 529, 540 (4th Cir. 1997) ("[T]he four-year statute of limitations began to run [from] the date of the injury."). The Supreme Court has also rejected the discovery rule for antitrust cases. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997); *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971). This panel cannot and should not depart from these binding precedents. And nothing in *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 144 S. Ct. 2440 (2024)—which holds that claims accrue under the Administrative Procedure Act when a plaintiff is injured, *id.* at 2451—undermines the long line of case law confirming that a Sherman Act claim likewise accrues when the plaintiff is injured.

standard.  Indeed, the allegation could be leveled in almost every case alleging collusion.  If this Court accepted Plaintiffs' position, then, it would effectively erase Congress's chosen statute of limitations for antitrust cases.  If entering *legitimate* contracts or similar *legal* conduct justifies tolling, what will remain of the statute of limitations?  For good reason, the antitrust laws and Rule 9(b) require more.

## II. Plaintiffs' Failure to Allege Due Diligence Provides an Additional Independent Ground for Affirmance.

Pleading affirmative acts with particularity is only the first requirement for adequately alleging fraudulent concealment.  Plaintiffs also must allege sufficient facts to show that they "failed to discover" the conspiracy "within the statutory period, despite ... the exercise of due diligence." *GO Comput.*, 508 F.3d at 178 (quoting *Pocahontas*, 828 F.2d at 218).  Although the district court did not need to reach this issue, this Court is "of course, entitled to affirm on any ground appearing in the record." *Scott v. United States*, 328 F.3d 132, 135 (4th Cir. 2003); *accord United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 194 (4th Cir. 2022).

### A. Plaintiffs' Allegations Show They Were on Inquiry Notice and Could Have Learned of the Alleged Agreement upon Investigation.

Plaintiffs "cannot simply ignore the diligence requirement and later claim that the alleged fraud was 'well-disguised.'" *SD3 II LLC v. Black & Decker (U.S.) Inc.*, 888 F.3d 98, 113 (4th Cir. 2018). Because "[f]raud by its nature is something perpetrators take pains to disguise," if an "allegedly concealed fraud excuse[d] the need for any diligence on plaintiffs' part" it "would permit statutory periods to be tolled indefinitely, even when plaintiffs could reasonably be expected to bring suit." *GO Comput.*, 508 F.3d at 179. Plaintiffs here concede that they made no effort to discover the alleged conspiracy during the 10 and 19 years in which they alleged injuries, Br. 49–50, and thus have not "alleged the exercise of due diligence." *Pocahontas*, 828 F.2d at 218.

Having failed to allege that they exercised any diligence, Plaintiffs accept they must adequately allege that they were not on inquiry notice of their claims. *See* Br. 49–51 (citing *SD3*, 888 F.3d at 108). But Plaintiffs have instead alleged facts evincing that they were on inquiry notice for years. Plaintiffs' pleadings also suggest that any investigation

would have uncovered the alleged no-recruit practices based on the allegations of widespread dissemination.

1.   Plaintiffs have pled their way into inquiry notice.  A plaintiff is on inquiry notice when he "knows of a pattern of particular actions that a defendant has taken against him, though the pattern's precise scope might be unclear and its exact legal ramifications uncertain."  *GO Comput.*, 508 F.3d at 179.  "Put another way, if the plaintiff (1) believes he might have been harmed and (2) knows who is responsible for that harm, then he is on inquiry notice to act."  *SD3*, 888 F.3d at 113.  A plaintiff need only be aware of the "*possibility*" of wrongdoing—and need not have "complete exposure of the alleged scam"—to trigger inquiry notice.  *See Bausch v. Philatelic Leasing, Ltd.*, 34 F.3d 1066 (Table), 1194 WL 446758, at *4 (4th Cir. 1994) (quotation omitted); *see also Brumbaugh v. Princeton Partners*, 985 F.2d 157, 162 (4th Cir. 1993) ("Commencement of a limitations period need not, however, await the dawn of complete awareness.").

Here, according to Plaintiffs' own allegations, they were on notice of a pattern of non-recruitment by the Shipbuilders and the possibility of a "gentlemen's agreement."  Specifically, Plaintiffs allege that "naval

49

engineers generally spend their entire careers without being solicited by a rival firm," and do not allege they were ever solicited while working in the industry. JA043–44 ¶ 7. They also allege that this lack of active recruitment was surprising due to a "persistent shortage of qualified naval engineers" and "high barriers to entry," which, Plaintiffs say, should have led to high demand, heady competition for labor among the Shipbuilders, as well as high salaries. *See* JA043–45 ¶¶ 7–8, 10; JA069–70 ¶ 126; JA072–73 ¶ 137; JA082–83 ¶ 167; *see also* JA080 ¶ 162 ("Economic theory suggests that naval engineers should have been able to exert significant bargaining power over Defendants during the conspiracy period."). Plaintiffs apparently observed—or could have observed—these dynamics decades ago, during their employment. That placed them on inquiry notice.

2.   Plaintiffs' allegations go further still, suggesting the "gentlemen's agreement" was readily discoverable had Plaintiffs taken any steps to timely investigate their claims.

For example, Plaintiffs allege that some Shipbuilders maintained a "do not hire list" available to recruiting staff and "required" candidates "to specify" that they "had independently pursued the opportunity and

not been solicited." JA075 ¶ 146; *see also* JA078 ¶ 155. Plaintiffs also allege that the supposed "gentlemen's agreement" was widely disseminated and known by *multiple* HR and recruiting employees, managers, and executives at a multitude of companies over two decades. *See* JA045–46 ¶ 12 ("in-house recruiting staff" and "hiring managers"); JA074 ¶ 142 ("[m]anagers with hiring authority" and "senior employee[s]"); JA076 ¶ 149 ("high-level employees," "executives," and "managers"); JA078 ¶ 156 ("manager involved in recruitment"). Plaintiffs further say the Shipbuilders maintained the "relevant policies and practices" amid "an astonishing number of sales, spin-offs, reorganizations, and other corporate events during the Class Period." JA048 ¶ 21; JA079 ¶ 160.

In other words, per Plaintiffs' representations, the Shipbuilders' alleged agreement was widely distributed—not some secret known only by a select few in the C-suite. Under similar circumstances, courts have rejected claims of tolling. *See Garrison*, 159 F. Supp. 3d at 1076 (rejecting fraudulent concealment where "no hire" policy was known by "numerous people," such as "the 'HR department,' 'key human resource and recruiting personnel,' the 'recruiting team,'" and managers); *Ryan*, 147 F.

Supp. 3d at 888–90 (rejecting fraudulent concealment where defendant's employees "readily discussed its non-solicitation agreements" and "Hands-Off List" "within" the company "and with other companies"); *Pool Prods. Distrib. Mkt. Antitrust Litig.*, 988 F. Supp. 2d at 724 (rejecting fraudulent concealment where "[m]any industry players" knew of the allegedly anticompetitive practices). Plaintiffs' allegations strongly suggest that, with little or no investigation, Plaintiffs could have timely identified the basis for their claim. Tolling is thus taken off the table. *See GO Comput.*, 508 F.3d at 179.

Plaintiffs insist that "reasonable plaintiffs in their circumstances would have assumed that their employers were complying with relevant laws, and that they lacked skills and information to discern what competitive wages should have been." Br. 49; *see also* JA102 ¶ 224 (alleging "a lack of transparency in the industry concerning salaries"). But having pled their way into inquiry notice, Plaintiffs were *obligated* to investigate when they were aware of the "*possibility*" of wrongdoing. *Bausch*, 1994 WL 446758, at *4 (quotation omitted); *see also SD3*, 888 F.3d at 113 ("[I]f the plaintiff (1) believes he might have been harmed and (2) knows who is responsible for that harm, then he is on inquiry notice

to act."). Plaintiffs were not free to continue to *assume* no wrongdoing and seek perpetual tolling after the fact. *See Go Comput.*, 508 F.3d at 179 (holding that defendant's statements were insufficient to justify fraudulent concealment); *Pocahontas*, 828 F.2d at 218–19 (same).

Plaintiffs' appeals to *Edmonson* on this point go nowhere. Br. 50. *Edmonson* merely observed that publicly available information of which a plaintiff is not aware does not give rise to inquiry notice. *See* 922 F.3d at 556. By contrast, again, Plaintiffs *have themselves pled* decades-old direct knowledge and experience of a lack of recruitment that they say was suspicious. As explained above, that constitutes inquiry notice.

## B. Plaintiffs Do Not Explain How They Discovered the Supposed Agreement in 2023.

Plaintiffs' further failure to account for how they learned of their claims in April 2023 is an additional basis to find a lack of due diligence.

As this Court has explained, tolling the statute of limitations for fraudulent concealment requires, under Rule 9(b), "distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been before made." *Pocahontas*, 828 F.2d at 219 (quoting

*Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974); citing Fed. R. Civ. P. 9(b); and collecting cases). It is "especially" important for plaintiffs to plead with particularity "the time when the fraud … was discovered" and how. *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 574 (4th Cir. 1976) (quotation omitted); *accord Jones v. Saxon Mortg., Inc.,* 980 F. Supp. 842, 847 (E.D. Va. 1997), *aff'd,* 537 F.3d 320 (4th Cir. 1998). Other Circuits likewise insist that plaintiffs must plead "when and how [they] discovered [the] alleged fraud" in light of Rule 9(b)'s strict requirements. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 881 (8th Cir. 2011); *see also Fedance v. Harris*, 1 F.4th 1278, 1289 (11th Cir. 2021) (reiterating *Summerhill's* admonition that a plaintiff must allege "when [the discovery] was made, what it was, how it was made, and why it was not made sooner").

Plaintiffs do not even attempt to meet this standard. They offer nothing to explain when or how they suddenly learned in April 2023 of an alleged multi-decade conspiracy stretching across many companies, despite apparently being aware well before April 2023 that they and others were not being actively recruited. *See, e.g.*, JA094 ¶ 201; JA102 ¶ 223. In short, Plaintiffs exercised no diligence whatsoever, offer no

account of how they suddenly learned of their claims after decades of alleged concealment, and therefore cannot establish tolling.[14]

### III. The District Court Did Not Abuse Its Discretion by Dismissing Without Leave to Amend.

Finally, Plaintiffs contend the district court was wrong to "issu[e] a final judgment rather than granting … [their] request in the alternative for leave to amend." Br. 52. In this Circuit, a plaintiff must both move for leave to amend and specify what allegation(s) she would add to her complaint to render the amendment non-futile. Plaintiffs did neither.

---

[14] Plaintiffs briefly urge this Court to "instruct[]" the district court to deny the Shipbuilders' motion to dismiss on failure to state a claim grounds. Br. 48. As stated above, the district court did not need to reach that issue given the untimeliness of Plaintiffs' claims; this Court likewise should not reach it. *Cf. Scott*, 328 F.3d at 135 (court may "affirm" on any ground in the record.). Nevertheless, it bears emphasizing that Plaintiffs did not plead what they say they pled on this point. If Plaintiffs' "extensive pre-suit investigation," Br. 1, had revealed an "eyewitness" to the Shipbuilders' forming an unlawful agreement, *id.* at 6 n.1, Plaintiffs would have alleged that. But they do not. The complaint contains no account of meetings or conversations between Shipbuilders in which any, let alone all of them entered into any unlawful recruiting agreement. Instead, Plaintiffs' so-called "direct evidence" describes the *independent* policies or practices of individual Shipbuilders—not an industrywide agreement. JA042–43 ¶ 4, JA078 ¶ 155 (alleged "no-hire list"); JA076 ¶ 150 (alleged individual polices); JA077 ¶ 152 (same); JA043–44 ¶ 7 (same).

Plaintiffs never filed a motion for leave to amend their complaint at any point before the district court. They never moved for leave prior to the entry of judgment. And they never sought reconsideration or vacatur after judgment was entered. *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) ("[A] district court may not grant [a] post-judgment motion [to amend] unless the judgment is vacated pursuant to Rule 59(e) or Fed. R. Civ. P. 60(b).") (en banc). Instead, they cursorily appended the following to the final sentence of their opposition to the motion to dismiss below: "However, if the motion is granted in any part, Plaintiffs request that any dismissal be without prejudice and with leave to amend." JA238.[15] They added a similar coda to their final statement at oral argument: "Finally, Your Honor, if you think that we're deficient in any regard on this issue, we would ask for leave to amend." JA324:20–24. Under Fourth Circuit precedent, that is plainly insufficient. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by

---

[15] Plaintiffs assert that they also requested leave to amend in a footnote of their opposition stating: "Even if Defendants were correct that Plaintiffs' claims were time-barred, nothing would prevent Plaintiffs from amending the complaint to include a Plaintiff employed by Defendants during the limitation period." JA211 n.16. This footnote did not actually *request* leave to amend, and in any event, it pertained to hypothetical new plaintiffs who, to this day, have not been identified.

… failing to develop its argument—even if its brief takes a passing shot at the issue.").

Plaintiffs' double faults— failing to file a motion seeking leave to amend either before or after judgment and failing to identify the allegations they would add—each independently establish that the district court did not abuse its discretion in dismissing their claims with prejudice.

In *Cozzarelli v. Inspire Pharmaceuticals Inc.*, the plaintiffs "requested leave to amend only in a footnote of their response to defendants' motion to dismiss, and again in the final sentence of their objections to the recommendation of the magistrate judge." 549 F.3d 618, 630 (4th Cir. 2008). They "never filed a motion for leave to amend before the district court, nor did they present the district court with a proposed amended complaint." *Id.* "Those requests," this Court held, "did not qualify as motions for leave to amend," so "we cannot say that the district court abused its discretion by declining to grant a motion that was never properly made." *Id.* at 630–31 (citing Fed. R. Civ. P. 7(b), 15(a)).

Similarly, in *ACA Financial Guaranty Corp. v. City of Buena Vista*, the plaintiffs "did not file a motion to amend," but only "requested leave

to amend five times in their response in opposition to the [defendants']
motion to dismiss"—twice in footnotes and three times in the body of their
response—which the district court denied or ignored.  917 F.3d 206, 217
(4th Cir. 2019).  The Court reaffirmed that such "informal" requests did
not "constitute[ ] a motion to amend," and that "a district court does not
abuse its discretion by declining to grant a request to amend when it is
not properly made as a motion."  *Id.* at 218.  The Court further held that
"[e]ven if we did find that [the plaintiffs'] 'requests' to amend constituted
a motion to amend, the district court did not abuse its discretion by
denying it" because the plaintiffs "never indicated what amendments
they were seeking."  *Id.*  "Without that information, there was no way for
a district court to evaluate whether the proposed amendments were
futile," so declining to grant leave is *per se* reasonable.  *Id.*

Plaintiffs do not even cite these dispositive precedents.  Instead,
they cite *Matrix Capital Management Fund, LP v. BearingPoint, Inc.*, 576
F.3d 172 (4th Cir. 2009).  That case is irrelevant and only further
highlights Plaintiffs' deficiencies.  There, the plaintiffs requested leave to
amend *both* informally in their opposition to motions to dismiss and at
oral argument, *and* formally by filing a post-judgment motion to alter or

amend the judgment, to which they attached a proposed second amended complaint that they indicated they were "prepared to immediately file." *Id.* at 192–93. In light of the motion and the proposed amended complaint containing additional allegations, this Court held that the district court "should have granted plaintiffs' motion to vacate the judgment and allowed them to amend their complaint." *Id.* at 193. In so holding, this Court did not suggest that "the court erred in refusing to allow an amendment earlier in the proceedings," based on the motion-to-dismiss briefing and oral argument. *Id.* That is, the Court expressly declined to hold that informal requests to amend, of the type Plaintiffs made here, are sufficient. The district court, therefore, did not abuse its discretion by declining to allow leave to amend.[16]

---

[16] On appeal, for the first time in this Court, Plaintiffs suggest what they would allege in an amended complaint. Plaintiffs' proposed language (which does not even take the form of actual allegations) comes too late and, in any event, is insufficient. Plaintiffs describe mere denials of wrongdoing, pretextual statements, and generic allegations that the *Pocahontas* Court and others have held are insufficient. *See* Br. 54; *supra* Section I(A)(1)(c). And these proposed additions do not overcome the host of further problems addressed in this brief. For instance, the additions still do not allege that Plaintiffs knew about the teaming agreements such that they could provide a basis for tolling. Nor do the additions supply details about who instructed whom to keep the supposed "gentlemen's agreement" unwritten, when that occurred, or how those ostensible directives were carried out.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

September 12, 2024

Respectfully submitted,

/s/ *Matthew S. Hellman*
Matthew S. Hellman
Douglas E. Litvack
Elizabeth B. Deutsch
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
mhellman@jenner.com
dlitvack@jenner.com
edeutsch@jenner.com

Michael A. Doornweerd
Gabriel K. Gillett
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
Tel: (312) 923-2631
mdoornweerd@jenner.com
ggillett@jenner.com

David G. Barger
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard
Suite 1000
McLean, VA 22102
Tel: (703) 749-1307
bargerd@gtlaw.com

*Counsel for Defendants-Appellees Bath Iron Works Corp., Electric Boat Corp., General Dynamics Corp., and General Dynamics Information Technology, Inc.*

/s/ *Adam Block Schwartz*
Adam Block Schwartz
Todd Stenerson
David Higbee
Djordje Petkoski
Joseph Paul Samuels
ALLEN OVERY SHEARMAN
STERLING US LLP
1101 New York Avenue, NW
Washington, DC 20005
Tel: (202) 508-8000
adam.schwartz@aoshearman.com
todd.stenerson@aoshearman.com
david.higbee@aoshearman.com
djordje.petkoski@aoshearman.com
joseph.samuels@aoshearman.com

Sima Namiri-Kalantari
CROWELL & MORING LLP
515 South Flower Street
40th Floor
Los Angeles, CA 90071
Tel: (213) 622-4750
snamiri@crowell.com

Chahira Solh
CROWELL & MORING LLP
3 Park Plaza
20th Floor
Irvine, CA 92614
Tel: (949) 263-8400
csolh@crowell.com

*Counsel for Defendants-Appellees*
*Huntington Ingalls Industries, Inc.,*
*HII Fleet Support Group LLC, HII*
*Mission Technologies Corp., Ingalls*
*Shipbuilding, Inc., and Newport News*
*Shipbuilding and Dry Dock Co.*

/s/ *John F. Terzaken, III*
John F. Terzaken, III
Abram J. Ellis
SIMPSON THACHER & BARTLETT
LLP
900 G Street, NW
Washington, DC 20001
Tel: (202) 636-5500
john.terzaken@stblaw.com
aellis@stblaw.com

Allison W. Reimann
GODFREY & KAHN, S.C.
One East Main Street
Suite 500
Madison, WI 53703
Tel: (608) 257-3911
areimann@gklaw.com

Sean O'D. Bosack
Christie B. Carrino
GODFREY & KAHN, S.C.
833 East Michigan Street
Suite 1800
Milwaukee, WI 53202
Tel: (414) 273-3500
sbosack@gklaw.com
ccarrino@gklaw.com

*Counsel for Defendant-Appellee*
*Marinette Marine Corp.*

/s/ *Attison L. Barnes, III*

Attison L. Barnes, III
Krystal B. Swendsboe
Scott M. McCaleb
Jon W. Burd
Daniel T. Park
WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
Tel: (202) 719-7000
abarnes@wiley.law
kswendsboe@wiley.law
smccaleb@wiley.law
jburd@wiley.law
dpark@wiley.law

*Counsel for Defendant-Appellee*
*Bollinger Shipyards, LLC*

/s/ *Perry Lange*

Perry Lange
Jennifer Milici
John W. O'Toole
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: (202) 663-6000
perry.lange@wilmerhale.com
jennifer.milici@wilmerhale.com
john.otoole@wilmerhale.com

*Counsel for Defendant-Appellee*
*Gibbs & Cox, Inc.*

/s/ *Benjamin L. Hatch*

Benjamin L. Hatch
Casey Erin Lucier

MCGUIREWOODS LLP
888 16th Street, NW
Washington, DC 20006
Tel: (202) 857-1700
bhatch@mcguirewoods.com
clucier@mcguirewoods.com

J. Brent Justus
Nicholas J. Giles
Joshua D. Wade
W. Cole Geddy
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1018
bjustus@mcguirewoods.com
ngiles@mcguirewoods.com
jwade@mcguirewoods.com
cgeddy@mcguirewoods.com

*Counsel for Defendant-Appellee
Serco, Inc.*

/s/ *Christopher C. Brewer*
Christopher C. Brewer
Ryan P. Phair
Michael F. Murray
Craig Y. Lee
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
Tel: (202) 551-1700
chrisbrewer@paulhastings.com
ryanphair@paulhastings.com
michaelmurray@paulhastings.com
craiglee@paulhastings.com

*Counsel for Defendant-Appellee*
*CACI International Inc.*

/s/ *William T. DeVinney*
William T. DeVinney
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road
Suite 750
Tysons Corner, VA 22182
Tel: (703) 942-8076
wdevinney@brigliahundley.com

*Counsel for Defendant-Appellee*
*The Columbia Group, Inc.*

/s/ *Matthew J. MacLean*
Matthew J. MacLean
Alvin Dunn
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Tel: (202) 663-8183
matthew.maclean@pillsburylaw.com
alvin.dunn@pillsburylaw.com

*Counsel for Defendant-Appellee*
*Thor Solutions, LLC*

/s/ *William Lawler*
William Lawler
Amanda C. DeLaPerriere
BLANK ROME LLP
1825 Eye Street, NW
Washington, DC 20006
Tel: (202) 420-2249
william.lawler@blankrome.com
amanda.delaperriere@blankrome.com

*Counsel for Defendant-Appellee*
*Tridentis, LLC*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the word limit of Rule 32(a)(7)(B)(i) of the Federal Rules of Appellate Procedure, as it contains 11,889 words, excluding the portions exempted by Rule 32(f).

2.  This brief also complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook type.

September 12, 2024

/s/ *Matthew S. Hellman*
Matthew S. Hellman

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2024, I caused the foregoing Brief of Defendants-Appellees to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system pursuant to Local Rule 25(a)(1)(B), causing a copy to be served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

September 12, 2024

/s/ *Matthew S. Hellman*
Matthew S. Hellman