# United States Court of Appeals
## for the
# Fourth Circuit

SUSAN SCHARPF and ANTHONY D'ARMIENTO,
on behalf of themselves and all others similarly situated,

*Plaintiffs/Appellants*,

— v. —

GENERAL DYNAMICS CORP.; BATH IRON WORKS CORP.; ELECTRIC BOAT CORP.; GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.; HUNTINGTON INGALLS INDUSTRIES, INC.; NEWPORT NEWS SHIPBUILDING AND DRY DOCK CO.; INGALLS SHIPBUILIDING, INC.; HII MISSION TECHNOLOGIES CORP.; HII FLEET SUPPORT GROUP LLC; MARINETTE MARINE CORPORATION; BOLLINGER SHIPYARDS, LLC; GIBBS & COX, INC.; SERCO, INC.; CACI INTERNATIONAL, INC.; THE COLUMBIA GROUP, INC.; THOR SOLUTIONS, LLC; TRIDENTIS, LLC; FASTSTREAM RECRUITMENT LTD,

*Defendants/Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

# REPLY BRIEF OF APPELLANTS

*Counsel for Plaintiffs-Appellants listed on the Following Page*

CP COUNSEL PRESS    (800) 4-APPEAL • (117133)

Brent W. Johnson
Steven J. Toll
Robert W. Cobbs
Alison S. Deich
Zachary R. Glubiak
Sabrina S. Merold
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Suite 500
Washington, DC 20005
(202) 408-4600

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292

Kevin K. Green
HAGENS BERMAN SOBOL SHAPIRO LLP
533 F Street, Suite 207
San Diego, CA 92101
(619) 929-3340

Elaine T. Byszewski
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
(213) 330-7150

George F. Farah
Nicholas Jackson
HANDLEY FARAH & ANDERSON PLLC
33 Irving Place
New York, NY 10003
(212) 477-8090

Simon Wiener
HANDLEY FARAH & ANDERSON PLLC
68 Harrison Avenue, Suite 604
Boston, MA 02111
(202) 921-4567

*Counsel for Plaintiffs-Appellants*

Candice J. Enders
Julia R. McGrath
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000

Brian D. Clark
Stephen J. Teti
Arielle S. Wagner
Eura Chang
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South,
    Suite 2200
Minneapolis, MN 55401
(612) 339-6900

*Additional Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION .............................................................................. 1

ARGUMENT ...................................................................................... 3

1. Defendants Persistently Mischaracterize Plaintiffs' Allegations, Which Allege Deliberate Affirmative Acts to Prevent Discovery of Their Conspiracy ................................. 3

    A. Defendants Ignore Plaintiffs' Factual Allegations to Erase Their *Intentional* Concealment ........................................ 4

    B. Defendants Ignore Plaintiffs' Allegations to Mischaracterize Them as Conclusory and Insufficiently Particular ........................................ 6

2. Defendants Ignore the District Court's Application of the Rejected "Separate and Apart" Standard ............................... 8

3. Defendants' Readings of *Pocahontas* and *Robertson* Are Unsupportable and in Direct Conflict with *Marlinton* and *Edmonson*, Which Control .................................................. 9

    A. *Pocahontas* Neither Turns on an "Affirmative Act" Nor Establishes a Loophole for Concealing Lies ..................... 10

    B. *Robertson* Does Not Bear Defendants' Reading ..................... 14

    C. Defendants' Only Justification for Their Misreading Is Explicitly Rejected in *Marlinton* ............................................ 17

4. Defendants' Other Cases Are Inapposite ........................................ 18

5. Defendants' Sham Argument Is Riddled with Logical Fallacies .................................................................................... 19

6. Defendants' Reliance Arguments Are Unsupported and Wrong ........................................................................................ 21

7. Plaintiffs Were Not on Inquiry Notice of the Conspiracy ................. 23

8. Plaintiffs' Request in the Alternative to Amend Was Amply Supported .................................................................................... 25

CONCLUSION ...................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*,
  917 F.3d 206 (4th Cir. 2019) ...............................................27

*Boland v. Consol. Muultiple Listing Serv., Inc.*,
  868 F. Supp. 2d 506 (D.S.C. 2011)........................................ 15, 16, 18

*Corder v. Antero Res. Corp.*,
  57 F.4th 384 (4th Cir. 2023) ...............................................6, 7

*Cozzarelli v. Inspire Pharms. Inc.*,
  549 F.3d 618 (4th Cir. 2008) ...............................................27

*CSX Transportation, Inc. v. Norfolk Southern Railway Co.*,
  114 F.4th 280 (4th Cir. 2024) ...............................................19

*Donaldson v. Primary Residential Mortg., Inc.*,
  2020 WL 3184089 (D. Md. 2020) ...............................................7

*Edmonson v. Eagle Nat'l Bank*,
  922 F.3d 535 (4th Cir. 2019) ...................................... *passim*

*Garrison v. Oracle Corp.*,
  159 F. Supp. 3d 1044 (N.D. Cal. 2016)..........................................24

*GO Computer, Inc. v. Microsoft Corp.*,
  508 F.3d 170 (4th Cir. 2007) ................................................ 2, 18, 23

*Grayson O Co. v. Agadir Int'l*,
  856 F.3d 307 (4th Cir. 2017) ...............................................26

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) ...............................................6, 7

*In re Animation Workers Antitrust Litig.*,
  87 F. Supp. 3d 1195 (N.D. Cal. 2015)..........................................19

*In re Coordinated Pretrial Proceedings in Petroleum
  Products Antitrust Litigation*,
  782 F. Supp. 487 (C.D. Cal. 1991) ......................................... 22, 23

*In re Pool Products Distribution Market Antitrust Litig.*,
  988 F. Supp. 2d 696 (E.D. La. 2013)........................................ 19, 24

ii

*In re Refrigerant Compressors Antitrust Litig.*,
795 F. Supp. 2d 647 (E.D. Mich. 2011) .............................................................19

*Island Creek Coal Co. v. Lake Shore, Inc.*,
832 F.2d 274 (4th Cir. 1987) ...............................................................25

*Jien v. Perdue Farms, Inc.*,
2020 WL 4719605 (D. Md. 2020) ......................................................26

*Jien v. Perdue Farms, Inc.*,
2020 WL 5544183 (D. Md. 2020) ......................................................26

*Laber v. Harvey*,
438 F.3d 404 (4th Cir. 2006) ..............................................................25

*McAnaney v. Astoria Fin.Corp.*,
2007 WL 2702348 (E.D.N.Y. 2007) ..................................................22

*Moore v. Equitrans*,
818 F. App'x 212 (4th Cir. 2020) .......................................................25

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*,
828 F.2d 211 (4th Cir. 1987) ..................................................... *passim*

*Robertson v. Sea Pines Real Estate Cos.*,
679 F.3d 278 (4th Cir. 2012) ........................................... 1, 2, 10, 14, 15, 16, 17

*Roy v. Bank of N.Y. Mellon*,
2018 WL 3912281 (E.D.N.Y. 2018) ..................................................22

*Ryan v. Microsoft Corp.*,
147 F. Supp. 3d 868 (N.D. Cal. 2015) ......................................... 19, 24

*SD3 II LLC v. Black & Decker (U.S.) Inc.*,
888 F.3d 98 (4th Cir. 2018) ...............................................................19

*SD3, LLC v. Black & Decker (U.S.), Inc.*,
215 F. Supp. 3d 486 (E.D. Va. 2016) ....................................... 3, 18, 21

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*,
71 F.3d 119 (4th Cir. 1995) ........................................................ *passim*

*Towers v. Iger*,
2017 WL 6044035 (N.D. Cal. 2017) ..................................................19

*U.S. v. Smith*,
21 F.4th 122 (4th Cir. 2021) ..............................................................16

**Statutes & Other Authorities:**

48 C.F.R. § 9.604 ...................................................................................20

Fed. R. Civ. P. 9(b)....................................................................6, 7, 8, 17

Fed. R. Civ. P. 15(a)(2) ..........................................................................26

# INTRODUCTION

Plaintiffs' opening brief identified three independent grounds for reversal. *First*, the district court misread the "affirmative acts of concealment" standard adopted in *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119 (4th Cir. 1995), applying instead the "separate and apart" standard *Marlinton* rejected. Br. 19-27. *Second*, the district court incorrectly characterized Plaintiffs' allegations as "failures to disclose" under a further misreading of *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211 (4th Cir. 1987), and *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278 (4th Cir. 2012). Br. 27-40. *Third*, the district court's decision rested on inferences drawn against Plaintiffs, violating basic motion-to-dismiss principles. *Id.* at 40-45.

In attempting to justify these errors, Defendants address their brief to an imagined set of facts, law, and argument that bears little relationship to those presented in this case. They ignore this Court's extensive precedential discussions in *Marlinton* and *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535 (4th Cir. 2019), instead proposing a reading of *Pocahontas* and *Robertson* at odds with both cases that encourages defendants to deliberately *lie* to plaintiffs. They offer arguments and policy rationales that have been explicitly rejected by this Court. And they adopt textbook logical fallacies.

To highlight a few flaws in Defendants' brief discussed in more detail below:

- Defendants ignore Plaintiffs' allegations to conflate *intentionally preventing the creation of written evidence* with inculpably *failing to record* evidence with no concealing objective, *see* § 1.A.

- They pretend Plaintiffs' allegations are conclusory, when they are sourced from *quoted participants in the conspiracy*; and they insist those facts are insufficiently particular without discussing the core questions of notice and substantial evidence, *see* § 1.B.

- They fail to defend the district court's misapplication of the *Marlinton* standard, asserting in one paragraph, without argument and without citation to authority or the record, that the district court did not err, *see* § 2.

- They mostly ignore cornerstone precedents *Marlinton* and *Edmonson* in favor of the cryptic *Pocahontas* and a footnote in *Robertson*, which they argue create categorical loopholes in the affirmative acts standard, including for *lying*, *see* § 3.

  - They rely on an interpretation of *Pocahontas* that *Marlinton* specifically rejected, and ignore its dependence on lack of diligence, *see* § 3.A.

  - They argue that *Robertson* created three loophole categories, in a footnote, without discussing *Marlinton*, *see* § 3.B.

  - Their only policy justification for these carve-outs is avoiding "nullif[ication]" of the statute of limitations, which *Marlinton* specifically rejected, *see* § 3.C.

- For the second time in this litigation, Defendants cite *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170 (4th Cir. 2007), as an affirmative acts case, though it is not. They also cite district court cases that do not use the affirmative acts standard, among other errors, *see* § 4.

- They encourage improper factfinding against Plaintiffs' allegations of sham provisions in teaming agreements using a chain of four separate logical fallacies, *see* § 5.

- In their reliance argument, they alter a quote from *SD3, LLC v. Black & Decker (U.S.), Inc.*, 215 F. Supp. 3d 486 (E.D. Va. 2016), to change its meaning, and selectively quote an opinion making *Plaintiffs'* argument, *see* § 6.

- They argue Plaintiffs should have suspected an industry-wide no-poach conspiracy simply because they themselves had not been recruited, *see* § 7.

- They concede the district court denied Plaintiffs' request in the alternative for leave to amend without making findings of futility, bad faith, or prejudice, *see* § 8.

That these are the arguments to which Defendants resort speaks volumes. The simple truth is that Plaintiffs' opening arguments are meritorious, and Defendants must therefore craft arguments disconnected from the law and facts. This Court should reverse the opinion and judgment of the district court.

## ARGUMENT

### 1. Defendants Persistently Mischaracterize Plaintiffs' Allegations, Which Allege Deliberate Affirmative Acts to Prevent Discovery of Their Conspiracy.

Defendants suggest that Plaintiffs' allegations that Defendants acted to prevent the creation of written evidence of their conspiracy are limited to "a single sentence" in paragraph 205 of Plaintiffs' complaint. Opp. 12 (quoting JA096). But the complaint is filled with allegations, including statements from Defendants' own former managers, detailing Defendants' deliberate efforts to be "careful not to write down evidence of their antitrust violations." *Marlinton*, 71 F.3d at 125.

For example, "*[s]everal* former managers" confirmed their "gentlemen's agreement" in those words. JA042. Lest there be any doubt, the purpose of maintaining an unofficial "gentlemen's agreement" was to avoid the risk of detection that would come with formalizing it. Witness statements elucidate: the agreement was "non-ink-to-paper," JA078; Defendants "don't put that in writing," JA045-046; and "[y]ou'd be hard pressed to find that in writing," JA045-046. These quotes illustrate Defendants' intentional departure from the ordinary practice of writing down important agreements among companies.

A.    Defendants Ignore Plaintiffs' Factual Allegations to Erase Their *Intentional* Concealment.

Defendants repeatedly recharacterize this intentional effort to prevent the creation of evidence as merely "pleading that the defendants' agreement was unrecorded," Opp. 22; *accord id.* 2, 12, 32. In doing so, they elide their *culpable* efforts—their *concealment*, their efforts to "exclude suspicion and prevent inquiry," *Edmonson*, 922 F.3d at 553—which place them firmly within *Marlinton*'s affirmative acts standard. By erasing allegations demonstrating the concealing purpose behind Defendants' actions, they seek refuge in cases where the plaintiffs pled merely *private* actions with no concealing purpose, debatable legal positions, or ambiguous representations but failed to plead nonconclusory acts of culpable *concealment*. *See infra* § 3; Br. 28-40.

They also seek to characterize Plaintiffs' allegations as failures to act, rather than acts. *See, e.g.*, Opp. 15-16, 18, 25. But *Marlinton* rejects this distinction, recognizing that being careful not to create evidence (*e.g.*, by using the phone or in-person meetings) involves actions as much as using writings and then shredding them. *See* 71 F.3d at 125.

But to even make this Circuit-rejected argument, Defendants must ignore allegations of "active actions": Defendants do not explain why "pass[ing] on" their agreement "only as verbal instructions from executives to managers" and "enforc[ing] the conspiracy through private phone calls between high-level executives and unofficial retribution," JA076, constitute "a bare allegation of an unwritten agreement," Opp. 2. Defendants *act* when they communicate about and enforce the conspiracy through non-discoverable channels for concealing purposes. Similarly, Defendants deployed euphemistic code words to hide the conspiracy's nature, sanitizing their unlawful conspiracy as a "gentleman's agreement" and, in conversations with recruiters, referring to other conspirators as "friends" with whom they "had a relationship."[1] JA045-046; JA078; *accord* JA097-098.

---

[1] Defendants argue these euphemisms "were not code words at all," but reflected actual friendships and relationships between competitors.[1] Opp. 27 n.8. This is a factual assertion; Plaintiffs allege Defendants used these terms to request that recruiters avoid co-conspirator firms, when the true reason for their request was

B. **Defendants Ignore Plaintiffs' Allegations to Mischaracterize Them as Conclusory and Insufficiently Particular.**

Defendants occasionally invoke Rule 9(b) to suggest that Plaintiffs failed to plead their allegations with sufficient particularity. *See, e.g.*, Opp. 2. This contention rests on a fundamental mischaracterization of the facts and law.

Defendants characterize Plaintiffs' allegations as a "conclusory" pleading that Defendants' "agreement was unrecorded." Opp. 22. But (1) that is not Plaintiffs' allegation, *see supra* § 1.A; (2) whether Defendants intentionally prevented the creation of written evidence is a factual assertion, not a legal conclusion; and (3) those assertions are backed by Plaintiffs' extensive pre-suit investigation and detailed supporting witness statements, *see supra* § 1.

As noted in Plaintiffs' opening brief, "[i]n cases involving alleged fraud by omission or concealment"—like this one—this Court applies a "relaxed Rule 9(b) standard," because in these cases the exact details of persons, dates, times, locations, and discussions "will often be in the sole possession of the defendant." *Corder v. Antero Res. Corp.*, 57 F.4th 384, 402 (4th Cir. 2023). Notably, cases requiring those details originate in *fraudulent misrepresentation*, where such information is necessarily known to plaintiffs with meritorious claims. *See, e.g.*, *Harrison v.*

---

Defendants' unlawful agreement. JA045-046; JA078. They also fail to explain why "gentleman's agreement" is not a euphemism deployed to "exclude suspicion and prevent inquiry." *Edmonson*, 922 F.3d at 553.

*Westinghouse Savannah River Co.*, 176 F.3d. 776, 783-84 (4th Cir. 1999) (quoted in *Edmonson*, 922 F.3d at 553). But "an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation."[2] *Donaldson v. Primary Residential Mortg., Inc.*, 2020 WL 3184089, at *12 (D. Md. 2020); *see also* JA213 nn. 18-19 (collecting cases).

Thus, applying an overly strict Rule 9(b) standard "would create a Catch-22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery." *Corder*, 57 F.4th at 402. It is precisely this Catch-22 in which Defendants seek to entrap Plaintiffs. But the Court has already rejected it, recognizing that in such cases plaintiffs satisfy Rule 9(b) when their allegations demonstrate "(1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Edmonson*, 922 F.3d at 553.

Defendants do not even cite this standard and make no attempt to argue that Plaintiffs' allegations fail either of these inquiries, for good reason. The complaint amply alleges who concealed the conspiracy (Defendants' executives and senior

---

[2] Internal citations, alterations, and quotations omitted, and emphasis added throughout, unless otherwise indicated.

managers), what they concealed (their multilateral no-poach conspiracy), when they concealed it (throughout the class period), how they concealed it (*see supra*, § 1.A), where (at their offices, on inter-firm phone calls, and at inter-firm events), and why (because it would get them in trouble and undermine the effectiveness of the conspiracy). *See* Br. 48-49. These allegations put Defendants on clear notice of what they will have to defend, and the detailed allegations—including witness statements—demonstrate the extensive "prediscovery evidence" in Plaintiffs' possession.[3] That is all that is required.

***

Defendants' arguments depend on these mischaracterizations of Plaintiffs' allegations either as "bare allegation[s] of an unwritten agreement" or as conclusory and inadequate under Rule 9(b). Their arguments fail on that ground alone.

## 2. Defendants Ignore the District Court's Application of the Rejected "Separate and Apart" Standard.

The district court applied the wrong standard when assessing the complaint: Though it quoted the *Marlinton* "affirmative acts of concealment" standard, its reasoning applies the "separate and apart" standard *Marlinton* rejected. Br. 19-27.

---

[3] Defendants' formalistic argument that "Plaintiffs may make some of these allegations '[up]on information and belief,' but they are not excused from Rule 9(b)'s 'particularity requirement,'" Opp. 23, fails because it assumes Plaintiffs have pled insufficient particulars in the first place. But Plaintiffs can plead such allegations if necessary.

The district court held that "the creation of and participation in a secret conspiracy" cannot be affirmative acts of concealment, JA362-363, but *Marlinton* makes clear affirmative acts "need not be separate and apart from the acts of concealment involved in the antitrust violation," 71 F.3d at 126.

In response to Plaintiffs' eight-page analysis, *see* Br. 19-27, Defendants simply assert that "[t]he district court did not require Plaintiffs to allege fraudulent conduct 'separate and apart' from the alleged antitrust violation; rather, it simply and only required them to allege with particularity 'affirmative acts' of concealment beyond the bare fact of secrecy." Opp. 34-35. But they offer neither citation nor analysis in support.

The district court could not have been clearer that it understood the "intermediate, affirmative acts standard" to *exclude* "the creation of and participation in a secret conspiracy," JA362-363, and that it believed such "acts of concealment involved in the alleged antitrust violation itself," *Marlinton*, 71 F.3d at 126, could satisfy only the rejected "self-concealing" standard, JA362-363. This was error. By requiring acts *beyond* the "creation of and participation in a secret conspiracy," the district court erroneously applied the wrong standard.

### 3. Defendants' Readings of *Pocahontas* and *Robertson* Are Unsupportable and in Direct Conflict with *Marlinton* and *Edmonson*, Which Control.

Defendants ignore this Court's two most extensive, well-reasoned, precedential discussions of the affirmative acts standard—*Marlinton* and

*Edmonson*—preferring to hang their argument on "an unbroken line of Circuit case law" consisting of (1) two sentences from a footnote in *Robertson* and (2) *Pocahontas*, a case extensively discussed, interpreted, and limited by *Marlinton*.[4] Opp. 18.

Defendants' argument fails three ways. First, this is a not a case about a conspiracy that was "not disclosed," but one that was *concealed. See supra*, § 1. Second, neither *Pocahontas* nor *Robertson* stand for the propositions Defendants ascribe to them. Third, even if they did, those propositions are foreclosed by *Marlinton*, *Edmonson*, and logical reasoning, which authoritatively reject them.

A.    *Pocahontas* Neither Turns on an "Affirmative Act" Nor Establishes a Loophole for Concealing Lies.

Defendants adhere to the district court's reasoning that under *Pocahontas*, "claims that Defendants lied and 'fail[ed] to own up to illegal conduct'" are not enough. JA360-361 (quoting *Pocahontas*, 828 F.2d at 218); *see* Opp. 28-30. This Court has never held that a defendant may seek shelter in the statute of limitations when it has lied to cover up its illegality, absent a plaintiff's lack of diligence.

To start, this Court has cautioned that *Pocahontas* said little about what is or is not an affirmative act of concealment. Defendants argue *Pocahontas* "insisted that fraudulent concealment must 'impl[y] conduct more affirmatively directed at

---

[4] They also claim Plaintiffs "barely mentioned" *Marlinton* below, Opp. 3, though it appears 59 times in the Joint Appendix.

deflecting litigation,'" Opp. 29 (quoting *Pocahontas*, 828 F.2d at 219), and that

"[t]he Court was crystal clear that the *Pocahontas* plaintiffs had failed to adequately

allege *either* '[f]raudulent concealment' *or* 'due diligence,' and made distinct

holdings as to each."[5] Opp. 33-34 n.9. But *Marlinton* explicitly rejected this attempt

to disaggregate *Pocahontas*'s "affirmatively directed" language from its due

diligence holding:

> There we did not … state to what extent our decision was based on the
> fact that the plaintiff had constructive notice of the antitrust violations
> or had failed to provide evidence of due diligence. Instead, we simply
> examined the allegations of the complaint and concluded that the
> plaintiff had failed to allege facts sufficient to invoke the fraudulent
> concealment doctrine ….
>
> ….
>
> Our observation, that to make out a claim of fraudulent concealment
> required evidence more 'affirmatively directed at deflecting litigation'
> than the failure to admit illegal activity in response to a general inquiry,
> was simply a comment on the deficient allegations in *Pocahontas*. It
> was not an adoption—express or implied—of any of the three
> standards. There was no reason to adopt any of these standards in
> *Pocahontas*; they were not argued to the court or even developed in the
> case law at that time.

71 F.3d at 122-24. Although *Marlinton* explains that *Pocahontas* offers no guidance

on the affirmative acts standard, Defendants nonetheless make *Pocahontas* the

---

[5] By "fraudulent concealment" here Defendants implicitly mean "affirmative acts of concealment," though of course *Pocahontas* made no such finding, as *Marlinton* explains.

cornerstone of their interpretation of the standard, and do not even discuss *Marlinton*'s caution against just that.

Defendants' reading is also wrong on its own terms. As Plaintiffs previously explained, *Pocahontas* holds that *where a plaintiff is suspicious of an antitrust conspiracy*, it is not enough to allege that a defendant did not "admit illegal activity in response to a *general* inquiry." *Marlinton*, 71 F.3d at 124; *see* Br. 30-34; *Pocahontas*, 828 F.2d at 219 ("'[D]ue diligence' contemplates more than the unpursued inquiry allegedly made by Pocahontas.").

Defendants insist *Pocahontas* "accepted plaintiffs' allegation that the defendants gave 'false' answers rather than admit their wrongdoing," but they cite the *district court*, not *Pocahontas*. Opp. 29-30. Reading *Pocahontas* itself confirms the alleged answers were merely generic explanations for low prices and rejected deliveries, in response to a "timid inquiry" that asked only about low prices and rejected deliveries. 828 F.2d at 218-219. If the *Pocahontas* Court viewed these answers as "false," never mind intentional *lies*, it did not say so. Indeed, it is difficult to know what the Court could have meant in seeking "conduct more affirmatively directed at deflecting litigation" if it had believed defendants to have deliberately given *false answers* about the conspiracy.

Ignoring (and sometimes occluding, *see* Opp. 28-29)[6] the vital "timid inquiry" piece of *Pocahontas*'s holding, Defendants argue that "Plaintiffs' position cannot be squared with *Pocahontas*." Opp. 29. But even if *Pocahontas* were not limited by *Marlinton* to its facts, Plaintiffs' case is consistent with the proposition that a plaintiff on inquiry notice may not rely on oblique answers to timid questions. Plaintiffs do not allege Defendants failed to detail their "concerted, illegal antitrust activity" in response to a "timid inquiry." 828 F.2d at 218. Rather, Defendants prevented them from knowing enough to inquire at all by, *inter alia*, preventing the creation of written evidence. *See* Br. 48-51.

Defendants and the district court argue Plaintiffs' arguments are foreclosed because "[h]ere, the allegations are that Defendants simply failed to admit or disclose their conspiracy without *any* inquiry of them at all," Op. 29 (quoting JA361). This does not follow. Because Defendants' actions *prevented* Plaintiffs from learning of the conspiracy, they had neither duty nor capacity to inquire, timidly or

---

[6] Defendants selectively elide *Pocahontas*'s holding: "[t]o permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct . . . would effectively nullify the statute of limitations in these cases." Opp. 28-29 (quoting 828 F.2d at 218-19). The phrase in ellipses—"*upon this sort of timid inquiry*"—underscores both the importance of the due diligence question to *Pocahontas*'s holding and the weakness of Defendants' efforts to contort that holding into one focused on affirmative acts alone.

otherwise. That Plaintiffs allege no inquiry of Defendants makes *Pocahontas inapposite*, not controlling.

Moreover, under Defendants' reading, allegations that "Defendants lied" to conceal their conduct are categorically excluded from the affirmative-acts inquiry. Opp. 16, 28-30; JA360-361. That would mean a defendant could affirmatively and consistently lie to potential plaintiffs—who could reasonably rely on those lies— and any allegations relating to that conduct could not, as a matter of law, suffice to toll the limitations period. That simply cannot be. Why would lies not count as "affirmative acts of concealment," when shredding documents does? *Cf. Marlinton*, 71 F.3d at 124-126. Certainly not because the rule would protect the statute of limitations from "nullif[ication]," Opp. 1, 23, 29; *see infra* § 1.C.

B.     *Robertson* Does Not Bear Defendants' Reading.

Defendants assert that *Robertson* not only creates categorical loopholes for lying, but also for meeting in secret and "agreeing not to discuss publicly the nature of [one's] communications in furtherance of [an] illegal scheme." *See* Opp. 24-28. But how *Robertson*'s footnote applies to *that* case, never mind *this* one, is unclear. The full text of the Court's analysis and holding on fraudulent concealment reads:

> On this issue, we also affirm. The district court properly concluded that plaintiffs failed to "allege affirmative acts of concealment or affirmative steps to mislead" and that "plaintiffs' allegations amount to no more than a failure to admit to wrongdoing, which does not suffice."

679 F.3d at 291 n.2 (quoting *Pocahontas*, 828 F.2d at 218-19). Defendants argue,

Opp. 24-26, that this footnote *credited* three barebones allegations in the complaints:

> Plaintiffs further allege that the Defendants used means and methods designed to avoid detection such as (1) meeting secretly, (2) giving pretextual reasons for costs of real estate, and (3) agreeing not to discuss publicly the nature of their communications in furtherance of their illegal scheme.

*Boland v. Consol. Muultiple Listing Serv., Inc.*, 868 F. Supp. 2d 506, 518 (D. S.C. 2011).

Defendants are wrong. *Boland* held that the plaintiffs' allegations failed because they *lacked particularity*—that the elements of these allegations suggesting culpable *concealment* ("secret" meetings, "pretextual" reasons, non-disclosure "in furtherance of their illegal scheme") were alleged in only the most conclusory terms, with no explanation or support from other allegations. *Id.* at 518. As Plaintiffs explained previously, the other allegations in fact suggested the complained-of conduct was not concealed *at all*, and that the *Boland* plaintiffs sought to construct concealment from ordinary *private* conduct. Br. 37-38. *Boland* rejected this attempt.

Defendants argue that *Robertson*'s footnote nonetheless credited each of the plaintiffs' allegations and held that *each* of them—not only the alleged "pretextual reasons for the costs of real estate," but also secret meetings and non-public communication—*categorically* "amount to no more than a failure to admit wrongdoing." Opp. 24-25. But this makes no sense—while *Pocahontas* dealt

directly with allegedly pretextual answers, it said *nothing* that would bear on secret meetings or non-public communication. 828 F.2d at 218. It makes no sense for secret meetings or non-public communications to be described as a "failure to *admit* wrongdoing," which implies *inquiry*—as in *Pocahontas*. Rather, those allegations are disposed of in the previous clause—"The district court properly concluded that plaintiffs failed to 'allege affirmative acts of concealment or affirmative steps to mislead.'" *Robertson*, 679 F.3d at 291 n.2. *Robertson* merely affirms that the conclusory allegations in *Boland* are insufficient because, as the district court held, they fail to provide the particularity needed to credit them.[7]

Here, in contrast, the allegations clearly support Plaintiffs' contention that Defendants' behavior was *concealing*, not just *private*. Plaintiffs have alleged in detail, often *quoting witnesses*, Defendants' scheme to prevent discovery of their conspiracy by preventing the creation of written evidence, adopting policies of phone or in-person communication to carry out that goal, limiting enforcement communications between firms to high-level executives, using code words to disguise their conspiracy with recruiters, adopting misleadingly narrow and

---

[7] It is also unlikely *Robertson* carved these three loopholes out of *Marlinton* without citing it, and unlikely that if *Robertson* established those loopholes they would go unremarked in *Edmonson*. The Court should rather read *Robertson* narrowly, in harmony with the Court's more in-depth precedents. *See U.S. v. Smith*, 21 F.4th 122, 138-39 (4th Cir. 2021).

redundant no-poach provisions in teaming agreements (discussed *infra*), and misrepresenting their hiring competitiveness on recruiting sites.[8] An inference of intentional concealment is amply supported, and these details are more than enough to satisfy Rule 9(b), *see supra* § 1.B. Defendants say Plaintiffs "offered no more 'particularity' than did the *Robertson* plaintiffs," Opp. 27, but just saying that doesn't make it so.

C. Defendants' Only Justification for Their Misreading Is Explicitly Rejected in *Marlinton*.

The *sole* normative justification Defendants offer for their incoherent readings of *Pocahontas* and *Robertson* is that to refuse to adopt them would "all but nullify the statute of limitations in antitrust cases." Opp. 1; *accord id*. 23, 29.

*Marlinton* says otherwise. 71 F.3d at 124. There, this Court rejected this argument as (1) ahistorical, because Congress passed the statute of limitations against a background assumption of tolling for fraudulent concealment; (2) illogical, because the antitrust statutes prohibit *many* typically unconcealed restraints of trade (*e.g.*, monopolization, merger to monopoly); and (3) illogical, because though

---

[8] Defendants say these misrepresentations are "nothing more than the disclaimers of an illegal agreement that this Court held were inadequate in *Pocahontas*," Opp. 45 (mischaracterizing *Pocahontas*), but these misrepresentations were used to *prevent* inquiry, not respond to inquiry. Plaintiffs waived nothing on this point, *contra* Opp. 45; *cf.* Br. 18, 29.

"almost all price-fixing conspiracies involve some affirmative acts of secrecy,"[9] concealment is not intrinsic to such a conspiracy. *Id.*

Even if this were a valid policy justification, the justification does not fit their proposed reading. Why would protection of the statute of limitations require carve-outs for lying, but not shredding documents? And Defendants make no attempt to square their readings with the extensive policy discussion in *Edmonson*, clarifying that the "purpose of fraudulent concealment doctrine is to ensure that wrongdoers are not permitted, or encouraged, to take advantage of the limitations period to commit secret illegal conduct without penalty." 922 F.3d at 549.

## 4. Defendants' Other Cases Are Inapposite.

Defendants again selectively quote *GO Computer* as if it discussed the affirmative acts element. *Compare* Opp. 23, *with GO Computer*, 508 F.3d at 178-79; *cf.* JA142; JA220. Like *Pocahontas*, however, it is a diligence case; unlike *Pocahontas*, it distinguishes between the affirmative acts and diligence elements.

*SD3* also turns on the plaintiff's inquiry notice, as the plaintiff "believed that a conspiracy existed and . . . consult[ed] antitrust counsel" years before filing. 215 F. Supp. 3d at 497. The case's discussion of "affirmative acts," like *Boland* and

---

[9] Defendants repeatedly characterize Plaintiffs' allegations as "bare secrecy," Opp. 18, 22, 32, 35, 46, but *Marlinton* is clear that reaching "secret" conspiracies is the goal of the standard. *See* 71 F.3d at 123-24 (conspiracies "generally secretive," "typically involve acts of secrecy," "usually secret").

*Pocahontas*, reflects the interaction between inquiry and answer and addresses private meetings *sans* indicia of concealment. *Id*. This Court affirmed on diligence, not affirmative acts. *SD3 II LLC v. Black & Decker (U.S.) Inc*., 888 F.3d 98, 108 (4th Cir. 2018) ("We need not, and thus do not, determine whether the Table Saw Manufacturers defrauded SawStop for the purpose of hiding an alleged boycott.").

*CSX Transportation, Inc. v. Norfolk Southern Railway Co.* asks, under the "continuing violations" doctrine, whether plaintiffs alleged continuations of an old conspiracy or new injurious acts. 114 F.4th 280, 288-89 (4th Cir. 2024). It has nothing to do with fraudulent concealment.[10]

## 5. Defendants' Sham Argument Is Riddled with Logical Fallacies.

Because even the district court recognized that Plaintiff's allegations of misleadingly narrow no-poach provisions in teaming agreements plead "affirmative acts," Defendants are at pains to defend the district court's improper factfinding

---

[10] Defendants cite five out-of-circuit district court cases, Opp. 33-34, but their cases are inapposite. *In re Animation Workers Antitrust Litig*., 87 F. Supp. 3d 1195, 1215 (N.D. Cal. 2015), and *In re Refrigerant Compressors Antitrust Litig.*, 795 F. Supp. 2d 647, 663-64 (E.D. Mich. 2011), both apply versions of the "separate and apart" standard, rejected in *Marlinton*. *Towers v. Iger*, 2017 WL 6044035, at *11 (N.D. Cal. 2017), *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 888-90 (N.D. Cal. 2015), and *In re Pool Products Distribution Market Antitrust Litig.*, 988 F. Supp. 2d 696, 724-25 (E.D. La. 2013), all reject "conclusory" allegations of concealment. Here, Plaintiffs' allegations are particularized and not conclusory, *see supra* § 1.

against these allegations. *See* JA363-364; Br. 41-44; Opp. 38-42. Their arguments

invoke plain logical fallacies:

First, because Plaintiffs do not litigate the anticompetitiveness of individual

agreements, Defendants argue it follows that the agreements and every provision in

them are *legal*. Opp. 38 ("Plaintiffs' sham argument fails because Plaintiffs do not

dispute that the teaming agreements and their no-recruit provisions are lawful.").

Not so. Moreover, Plaintiffs obviously do challenge the provisions as a scheme of

concealment.[11] Br. 42 n.17; *contra* Opp. 40 (conflating abstract illegality and

concealment).

Second, they argue what is *legal* in the abstract may not be concealment in

context. Opp. 38, 40. This is also wrong. Shredding a document is legal; deliberately

shredding evidence is concealment.

Third, they argue that because teaming *agreements* are beneficial (improper

factfinding), no-poach *provisions* must also be beneficial (wrong), and may not be

concealing (also wrong).[12] *Id.* 38-39.

---

[11] Defendants suggest Plaintiffs "do not dispute" that the agreements and provisions are lawful and procompetitive. Opp. 38. But at this stage, Plaintiffs dispute all Defendants' *ipse dixit* factual and legal assertions.

[12] The federal regulations Defendants quote for this argument also prohibit "team arrangements in violation of antitrust statutes." 48 C.F.R. § 9.604.

Fourth, they argue that, because *Edmonson* described its particular scheme as having the "sole purpose" of concealment, *all* acts of concealment (or at least all shams) must have concealment as their "sole purpose." *Id.* 39-40. This also does not follow.[13]

Without these plainly incorrect logical leaps, Defendants are left with no explanation why the district court should be entitled to assume away Plaintiffs' allegations of concealment through teaming provisions.

## 6. Defendants' Reliance Arguments Are Unsupported and Wrong.

Defendants argue that, to qualify as affirmative acts of concealment, their concealing conduct must be relied upon by the Plaintiffs. *Id.* 42-44. This is incoherent—how may one rely on, for instance, shredding a document? Unsurprisingly, this is not the law.

Defendants' argument hinges on a stray quote from *Edmonson* and a bald misquote of *SD3*, where Defendants have merged unrelated sentences and omitted context to radically alter the meaning of the text. *Compare* Opp. 43 ("'fraudulent concealment … fails as a matter of law [where the plaintiff] … did not rely on Defendants' statements'") (alterations in original), *with SD3*, 215 F. Supp. 3d at 497

---

[13] As Plaintiffs noted previously, *Edmonson*'s sham entities performed real services, as the alleged kickbacks were delivered as in-kind "marketing materials and services" and would not be kickbacks if they were not genuinely valuable. 922 F.3d at 541; Br. 44. *Edmonson* does not insulate an entire scheme from fraudulent concealment when it includes some non-sham elements.

("SawStop's fraudulent concealment argument also fails as a matter of law *because a fraudulent concealment defense requires a showing that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action.* Sawstop did not rely on Defendants' statements; SawStop in fact believed that a conspiracy existed and was consulting antitrust counsel by 2006. *Fraudulent concealment cannot apply unless 'the claimant failed to discover those [facts which are the basis of its claim] within the statutory period.*").

Sawstop lost because if failed to satisfy the *second* element of the fraudulent concealment test—"the plaintiff failed to discover those facts"—not because reliance on acts of concealment is required. *Edmonson*, 922 F.3d at 548. The exact same fact pattern is presented in *Roy v. Bank of N.Y. Mellon*, 2018 WL 3912281, at *6 (E.D.N.Y. 2018).[14]

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation* makes Plaintiffs' case:

> Defendants argue that even if there were affirmative acts, they were not designed to conceal the conduct from plaintiffs. The proper focus, however, is not whether the intent was to conceal the information from plaintiffs, but whether the concealment ... prevented [plaintiff] from being alerted....
>
> The purpose of establishing and using the network [of surreptitious phone lines] was admittedly to keep price contacts secret. By

---

[14] In *McAnaney v. Astoria Fin. Corp.*, the plaintiff rooted concealment in representations the defendant made *during the litigation*, which obviously do not excuse late filing. 2007 WL 2702348, at *11 (E.D.N.Y. 2007).

eliminating telephone records, defendants minimized the risk that a grand jury subpoena or private litigant using discovery would uncover the communications or that a "whistleblower" employee might see the records and report the matter.

782 F. Supp. 487, 490 (C.D. Cal. 1991). This is precisely the point: the sham provisions and other affirmative acts of concealment need not have fooled *Plaintiffs* in particular, but only "minimized the risk" that *someone* would uncover the conspiracy.

**7. Plaintiffs Were Not on Inquiry Notice of the Conspiracy.**

"[T]his Court long has held that 'it is possible to satisfy the due diligence requirement without demonstrating that it engaged in any specific inquiry'" where "the plaintiff establishes that it was not (and should not have been) aware of facts that should have excited further inquiry." *Edmonson*, 922 F.3d at 554 (quoting *Marlinton*, 71 F.3d at 128). Inquiry notice "charges a person to investigate when the information at hand would have prompted a reasonable person to do so." *GO Computer*, 508 F.3d at 178. Plaintiffs allege they:

believed that they were being compensated at competitive levels and were unaware of the agreement ….

While Defendants' conspiracy meant that many naval engineers were never solicited by rival firms during their careers, this would not have been enough for a reasonable plaintiff to suspect and uncover a multi-firm, decades-long conspiracy …. To the contrary, a reasonable plaintiff would have assumed that a naval engineering firm … was complying with all relevant laws.

… Plaintiffs could not have inferred the likelihood of Defendants' conspiracy from their sub-competitive wages. Estimation of

competitive wage levels requires specialized expertise not available to ordinary naval engineers.

JA102. These are factual allegations that will be established or not with evidence. The only question at this stage is whether they are plausible. Inquiry notice and due diligence are the province of the jury. *Edmonson*, 922 F.3d at 554.

Nonetheless, Defendants argue Plaintiffs should have intuited the possibility of an industry-wide no-poach conspiracy from "a pattern of non-recruitment," in combination with Plaintiffs' allegations of a "persistent shortage of qualified naval engineers" and "high barriers to entry." Opp. 49-50. But Plaintiffs are naval engineers—not economists. And "[d]ue diligence does not mean that borrowers must presume their bank is lying or dissembling and therefore that further investigation is needed." *Edmonson*, 922 F.3d at 556.

Defendants argue that other industry workers were alleged to have been aware of the conspiracy. Opp. 51. But speculation that Plaintiffs could have discovered the conspiracy from them is (1) an unsupported factual assertion, and (2) beside the point, because Plaintiffs were not on inquiry notice requiring them to investigate. *Edmonson*, 922 F.3d at 554; *Marlinton*, 71 F.3d at 128.[15] Defendants' logic is once

---

[15] The out-of-circuit cases Defendants cite are inapposite. In *Pool Products*, "other Dealers ***like plaintiffs*** [] were explicitly told about Pool's practices." 988 F. Supp. 2d at 724. The other two cases address affirmative acts, not diligence. *See Ryan.*, 147 F. Supp. 3d at 885; *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1073 (N.D. Cal. 2016).

again fallacious—they assume that if *people other than Plaintiffs* knew about the conspiracy, *Plaintiffs* must have been on inquiry notice of it.

Finally, Defendants argue Plaintiffs failed to allege when and how the conspiracy was discovered. Opp. 53-54. But Plaintiffs allege that they discovered the gentlemen's agreement in April 2023, JA102, following an "investigation [that] uncovered direct evidence of the conspiracy, gathered from eyewitness industry participants." JA075. Plaintiffs also explained at oral argument that additional details would be subject to attorney-client privilege. JA314-15. Surely the complaint's allegations are sufficient to plausibly allege a lack of inquiry notice (an issue for the jury) without requiring disclosure of the contents of attorney-client communications and invading the foundations of the attorney-client relationship.

## 8. Plaintiffs' Request in the Alternative to Amend Was Amply Supported.

"[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). "[D]istrict courts must provide reasons for denying leave to amend." *Moore v. Equitrans*, 818 F. App'x 212, 218 (4th Cir. 2020) (unpublished); *accord Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987).

Defendants do not argue the district court applied this standard, instead asserting that Plaintiffs "fail[ed] to develop" an argument regarding leave to amend their complaint. Opp. 56-57. But below, Plaintiffs requested in writing that "any dismissal be without prejudice and with leave to amend," citing Rule 15(a)(2)'s instruction to "freely give leave," and quoting this Court's *en banc* explanation that Rule 15 is a "liberal rule" that "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." JA238. Similar requests in the alternative have been granted in this Circuit. *See*, *e.g.*, *Jien v. Perdue Farms, Inc.*, 2020 WL 5544183, at *15 (D. Md. 2020); 2020 WL 4719805, at n.75 and accompanying text (D. Md. 2020).[16]

Defendants next argue Plaintiffs failed to specify what allegations they would add to their complaint. But this is another Catch-22. As *Jien* observed, a dismissal order is "the first time Plaintiffs have [] the opportunity to understand the Court's view of the [c]omplaint's deficiencies." 2020 WL 5544183, at *15. Before the district court's opinion, Plaintiffs could not anticipate the district court's reasoning or assess whether they had a basis on which to amend effectively.[17]

---

[16] Defendants rely on *Grayson O Co. v. Agadir Int'l*, Opp. 57, but it is a summary judgment case with no Rule 15 concern that plaintiffs would be prevented from developing a case on the merits. 856 F.3d 307, 316 (4th Cir. 2017).

[17] Indeed, until this Court rules, they *still* do not know what further allegations might be required, if any.

The district court denied Plaintiffs leave to amend without giving them an opportunity to offer further non-futile allegations. *Cf. Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (noting it was "clear that amendment would be futile"); *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 218 (4th Cir. 2019) (there was "no way for a district court to evaluate whether the proposed amendments were futile or not."). It provided no explanation, nor did it find that further allegations would be futile, that there was bad faith on Plaintiffs' part, or that amendment would prejudice Defendants. The Court need not reach this issue, but this, too, was error.

## CONCLUSION

The district court's opinion and judgment should be reversed, and nothing in Defendants' arguments suggests otherwise.

Dated: October 3, 2024

*/s/ Brent W. Johnson*

Brent W. Johnson

Steven J. Toll
Robert W. Cobbs
Alison S. Deich
Zachary R. Glubiak
Sabrina S. Merold
COHEN MILSTEIN SELLERS &
TOLL PLLC
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Tel: (202) 408-4600
bjohnson@cohenmilstein.com
stoll@cohenmilstein.com
rcobbs@cohenmilstein.com
adeich@cohenmilstein.com
zglubiak@cohenmilstein.com
smerold@cohenmilstein.com

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN
SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000
shanas@hbsslaw.com
riop@hbsslaw.com

Steve W. Berman
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
steve@hbsslaw.com

Kevin K. Green
HAGENS BERMAN
SOBOL SHAPIRO LLP
533 F Street, Suite 207
San Diego, CA 92101
Tel: (619) 929-3340

Elaine T. Byszewski
HAGENS BERMAN
SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Tel: (213) 330-7150
elaine@hbsslaw.com

George F. Farah
Nicholas J. Jackson
HANDLEY FARAH & ANDERSON
PLLC
33 Irving Place
New York, NY 10003
Tel: (212) 477-8090
gfarah@hfajustice.com
njackson@hfajustice.com

Simon Wiener
HANDLEY FARAH & ANDERSON
PLLC
68 Harrison Avenue, Suite 604
Boston, MA 02111
Tel: (202) 921-4567
swiener@hfajustice.com

***Counsel for Plaintiffs-Appellants***

Candice J. Enders
Julia R. McGrath
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
cenders@bm.net
jmcgrath@bm.net

Brian D. Clark
Stephen J. Teti
Arielle S. Wagner
Eura Chang
LOCKRIDGE GRINDAL NAUEN
P.L.L.P.
100 Washington Avenue South,
Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
bdclark@locklaw.com
sjteti@locklaw.com
aswagner@locklaw.com
echang@locklaw.com

*Additional Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with applicable type-volume and length limitations of FED. R. APP. P. 32(a)(7)(B) because this brief contains 6,178 words, excluding the items exempted by FED. R. APP. P. 32(f).

The brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size in Times New Roman.

Dated: October 3, 2024

*/s/ Brent W. Johnson*
Brent W. Johnson

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief of Plaintiffs-Appellants with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system on October 3, 2024.

I also certify that the foregoing document is being served this day to all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Dated: October 3, 2024

/s/ Brent W. Johnson
Brent W. Johnson