No. 24-1465

# In the
# United States Court of Appeals For the Fourth Circuit

———————————

SUSAN SCHARPF, ET AL.,
*Plaintiffs-Appellants,*

v.

GENERAL DYNAMICS CORP., ET AL.,
*Defendants-Appellees.*

———————————

On Appeal from the United States District Court for the Eastern
District of Virginia at Alexandria in Case No. 1:23-cv-01372-AJT-WEF

———————————

**BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED
STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF
APPELLEES' PETITION FOR REHEARING *EN BANC***

———————————

Kevin R. Palmer
Matthew P. Sappington
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062

Elbert Lin
Kevin S. Elliker
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8656
kelliker@hunton.com

Erica N. Peterson
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>24-1465</u>      Caption: <u>Susan Scharpf, et al. v. General Dynamics Corp., et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Chamber of Commerce of the United States of America</u>
(name of party/amicus)

_____

 who is _____<u>Amicus</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                            ☐YES ☑NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Kevin S. Elliker          Date:     May 30, 2025

Counsel for:  Chamber of Commerce of the USA

# TABLE OF CONTENTS

Corporate Disclosure Statement...............................................i

Table of Authorities................................................................iv

Interest of *Amicus Curiae* ......................................................1

Summary of Argument.............................................................2

Argument ................................................................................4

I.    Statutes of limitations serve essential policy objectives. ................4

II.    The fraudulent-concealment doctrine is narrow............................6

III.    The business community depends on predictable statutes of limitations.........................................................................9

IV.    The panel's holding undermines the policies behind statutes of limitations.......................................................................11

Conclusion.............................................................................15

Certificate of Compliance .......................................................16

Certificate of Service .............................................................16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. Woods*, 6 U.S. (2 Cranch) 336 (1805) ......................................... 4

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ....................... 14

*Bd. of Regents of the Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478 (1980) ............................................................................. 4, 5, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................... 13

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) .............. 13

*Burnett v. N.Y. Cen. R.R. Co.*, 380 U.S. 424 (1965) .................................. 5

*Chaaban v. Criscito*, 468 F. App'x 156 (3d Cir. 2012) .............................. 8

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499 (9th Cir. 1988) ..................................................................................... 8

*Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535 (4th Cir. 2019) ............. 7, 8

*Gabelli v. SEC*, 568 U.S. 442 (2013) ..................................................... 4, 5

*Holmberg v. Armbrecht*, 327 U.S. 392 (1946) ........................................ 12

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211 (4th Cir. 1987) .................................................................. 7, 8

*Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278 (4th Cir. 2012) ................................................................................... 8

*Rotella v. Wood*, 528 U.S. 549 (2000) ...................................................... 6

*State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065 (2d Cir. 1988) ......................................................................................... 8

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119 (4th Cir. 1995) .......................................................... 7

*Wood v. Carpenter*, 101 U.S. 135 (1879) ................................................. 4

iv

# INTEREST OF *AMICUS CURIAE*[1]

The Chamber of Commerce of the United States of America (the Chamber) is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community. The Chamber's members are frequent targets of litigation, and class-action litigation in particular, and thus have a strong interest in ensuring the rigorous and consistent enforcement of statutes of limitations to reduce the potential for abusive and protracted litigation.

---

[1] Undersigned counsel for certifies under Fed. R. App. P. 29(a) that this brief was not authored in whole or part by any parties' counsel, and no one other than *amicus* and its counsel have contributed money for the brief. The parties have consented to this filing.

## SUMMARY OF ARGUMENT

Statutes of limitations reflect fundamental legislative judgments that are vital to the business community's interests in fairness, judicial efficiency, and economic stability. Limitations rules ensure claims are brought while evidence is available, witnesses are accessible, and memories are fresh. And they provide legal certainty that allows businesses to allocate risk, plan investments, and close the books on past conduct. The fraudulent-concealment doctrine has long been understood as a narrow exception to these principles, available only when the fraud is self-concealing or a defendant takes affirmative steps to prevent a plaintiff from discovering a claim despite reasonable diligence.

The panel's decision departs from that settled understanding. It holds that a plaintiff can avoid the statute of limitations simply by alleging the defendants did not document their actionable conduct in writing. In doing so, the decision converts silence into concealment and threatens to erase the carefully drawn boundary between stale claims and timely ones. Under the panel's approach, plaintiffs asserting decades-old claims need only plead that the alleged misconduct was kept "unwritten" to open the door to discovery, class certification, and

potentially ruinous settlement pressure. As Chief Judge Diaz noted in dissent, under that regime, "we needn't bother having a statute of limitations defense at all." Op.37.

The panel's holding undermines the core purposes of limitations periods. It invites litigation over ancient conduct that cannot be fairly defended. It exposes businesses to indefinite liability for events that no employee remembers and no record explains. And it rewrites the doctrine of fraudulent concealment into an all-purpose escape hatch, untethered from the requirement of affirmative, deceptive conduct—an exception that swallows the rule.

The Court should grant rehearing *en banc* to restore the balance that statutes of limitations are meant to preserve. Affirming the district court's dismissal will reaffirm that the fraudulent-concealment exception is reserved for cases of affirmative concealment—not for claims that simply arrived too late.

## ARGUMENT

### I. Statutes of limitations serve essential policy objectives.

"Statutes of limitations are not simply technicalities." *Bd. of Regents of the Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 487 (1980). To the contrary, "they have long been respected as fundamental to a well-ordered judicial system." *Id.* In that regard, they are indispensable to the fair administration of justice, balancing plaintiffs' rights to pursue legitimate claims with defendants' rights to certainty and repose.

That balance is not novel. As Chief Justice Marshall explained over two centuries ago, it "would be utterly repugnant to the genius of our laws" if expired claims could "be brought at any distance of time." *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 342 (1805). Since then, courts repeatedly have affirmed that limitations rules reflect a legislative judgment that, at some point, the right to be free from stale claims prevails over the right to prosecute them. *Gabelli v. SEC*, 568 U.S. 442, 447-48 (2013). Limitations periods bring "security and stability to human affairs." *Id.* at 448 (quoting *Wood v. Carpenter*, 101 U.S. 135, 139 (1879)).

One reason for the stability promised by statutes of limitations is a "policy of repose, designed to protect defendants." *Burnett v. N.Y. Cen.*

*R.R. Co.*, 380 U.S. 424, 428 (1965). When a statute "sets a fixed date when exposure" will end, parties can more accurately predict their "potential liabilities" and make reliable plans. *Gabelli*, 568 U.S. at 448. They give people the certainty to make decisions, take risks, and plan for a future without having to hedge against a lawsuit over decades-old alleged conduct.

Statutes of limitations also facilitate fair and just adjudication of disputes. The adversarial process depends on access to evidence and testimony and "is obviously more reliable if the witness or testimony in question is relatively fresh." *Tomanio*, 446 U.S. at 487. Indeed, "there comes a point at which the delay of a plaintiff in asserting a claim" likely will "impair the accuracy of the fact-finding process." *Id.* The further litigation is from its animating events, the harder it becomes to establish the truth. Limitations periods thus "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Gabelli*, 568 U.S. at 448 (citation omitted).

Finally, limitations rules reflect the *legislature's* judgment in weighing finality against redress. *See id.* That judgment is a critical

guarantee that the rule of law will not morph into a tool of retroactive punishment. These democratically imposed rules thus draw a hard line that sets the outer boundary of judicial power and protects defendants from indefinite second-guessing of past conduct.

## II. The fraudulent-concealment doctrine is narrow.

Of course, hard lines sometimes need soft edges. Accordingly, the law recognizes narrow, carefully defined exceptions to statutes of limitations—such as the fraudulent-concealment doctrine. These exceptions reflect a basic instinct of fairness: When a plaintiff, despite diligent efforts, could not have known that they had a claim to bring or was actively misled by the defendant, they can get more time. *See Tomanio*, 446 U.S. at 487-88. In those circumstances, the rule can bend to ensure justice is not denied simply because the clock ran faster than the facts. But the exceptions must remain just that, because "[t]he virtue of relying on equitable tolling lies in the very nature of such tolling as the exception, not the rule." *Rotella v. Wood*, 528 U.S. 549, 561 (2000).

To that end, this Court has recognized that the fraudulent-concealment doctrine has narrow application. That exception applies only when a plaintiff shows (1) the defendant "fraudulently

concealed facts that are the basis of the plaintiff's claim" and (2) "the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995). The first element requires the plaintiff to show "affirmative acts of concealment." *Id.* For instance, a plaintiff might meet that burden by alleging the defendant "employed some trick or contrivance intended to exclude suspicion and prevent injury." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) (citation omitted).

That framework outlines the doctrine, but this Court has been careful to cabin its reach. After all, if every omission or evasive answer could stop the clock, the exception would quickly swallow the rule. This Court held as much by distinguishing silence from subterfuge in *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211 (4th Cir. 1987). In that case, the plaintiff alleged the defendant concealed the true nature of its illegal antitrust activity when it responded to a question about its quotas by blaming a railroad strike. *See id.* at 218. But "[t]o permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct upon this sort of timid inquiry

would effectively nullify the statute of limitations." *Id.* at 218-19. Instead, a plaintiff must allege "conduct more affirmatively directed at deflecting litigation." *Id.* at 219; *see also Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 291 n.2 (4th Cir. 2012) (affirming dismissal of time-barred claim when "plaintiffs failed to 'allege affirmative acts of concealment or affirmative steps to mislead'") (quoting *Pocahontas*, 828 F.2d at 218-19).

This Court found such affirmative concealment in the RESPA context when defendants entered into "sham" back-dated agreements to "disguise" a kickback scheme. *Edmonson*, 922 F.3d at 553-54. Other courts have found it when defendants burned and shredded documents, *State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065, 1084-85 (2d Cir. 1988), or issued false, misleading press releases, *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 505 (9th Cir. 1988). In ERISA cases, courts have deemed sufficient proof that plan administrators misreported account balances, conducted fraudulent transfers, and controlled the plan to shield that activity from scrutiny. *Chaaban v. Criscito*, 468 F. App'x 156, 161 (3d Cir. 2012). These are the sorts of affirmative, deceptive acts the fraudulent-concealment doctrine was designed to reach.

The fraudulent-concealment doctrine exists to prevent injustice, not to invite open-ended litigation. That is why, until now, this Court has insisted on a high bar: not just nondisclosure, but affirmative acts meant to mislead. That limit preserves the doctrine's integrity while protecting the predictability limitations periods are meant to provide. When properly applied, the rule and its exception work together, ensuring fairness to plaintiffs and defendants alike.

## III. The business community depends on predictable statutes of limitations.

There are few legal rules as quietly indispensable to the business community as statutes of limitations. By setting a time limit on when a claim can be brought, legislatures provide the foundations on which strong businesses can thrive: stability, fairness, and economic efficiency. For all companies, statutes of limitations are vital safeguards against uncertainty, unbounded liability, and the erosion of reliable legal process.

Start with the principle of repose. The certainty that old claims will not rise from the dead allows executives and managers to make long-term plans, investors to assess litigation risk accurately, and companies to innovate without the fear that every step forward might reawaken disputes from the distant past. Clear limitations periods give businesses

the ability to assess that exposure and move forward. Without it, every closed file could become an open case, and every past decision suddenly could be back in play.

Judicial fairness likewise looms large for businesses. Commercial litigation depends on documents, witness recollections, and data. As time passes, all of these degrade. Companies generate huge volumes of electronic and paper records every day, and they cannot bear the burden of retaining every document or preserving every email indefinitely on the off chance that someone alleges misconduct years later. Employees move on, forget details, or pass away. And technology platforms become obsolete, rendering old data unrecoverable. Without fixed deadlines for bringing suit, businesses would face the burden of countering decades-old claims when what is most important to their defenses is least accessible. Likewise, statutes of limitations permit businesses to release holds on documents and data after a reasonable time without bearing the cost of preservation or facing spoliation sanctions.

Finally, the ability to assess litigation exposure drives investment and economic growth. Mergers, acquisitions, and capital expenditures depend on companies' ability to price risk accurately. If legal exposure

never ends, deals become harder to negotiate and more expensive to close. An acquiring party might insist on steep discounts—or walk away entirely—if they cannot get clarity about the risks they are assuming. Statutes of limitations give structure to those decisions and avoid needless waste of economic potential.

## IV. The panel's holding undermines the policies behind statutes of limitations.

The panel's decision bends the fraudulent-concealment doctrine to its breaking point and, if left intact, will carry serious consequences not only for the law, but for the broader business community. By holding that the mere allegation of an unwritten agreement can satisfy the requirement of an "affirmative act" of concealment, the panel invites an end-run around the limitations bar in nearly every case. That rule threatens to eviscerate the stability that statutes of limitations bring to the business world.

If the bare allegation that an agreement was not written down is enough to avoid dismissal, then almost any long-expired claim can be resurrected simply by alleging secrecy. Plaintiffs could revive decades-old claims by alleging that defendants agreed to fix prices, that the parties never put the arrangement into writing—all without pleading

a single affirmative act designed to mislead. Under that regime, virtually any expired claim can be rebranded as concealed misconduct, and defendants would have no "statute of limitations defense at all." Op.37 (Diaz, C.J., dissenting).

The panel decision offers no limiting principle to prevent such outcomes. To the contrary, it explicitly equates the "careful[] avoid[ance]" of documentation with the kind of affirmative deception the doctrine requires. Op.9 ("Neither logic nor our precedent supports distinguishing between defendants who destroy evidence of their conspiracy and defendants who carefully avoid creating evidence in the first place."). Future plaintiffs will seize on this rule to argue that nearly any unrecorded communication or confidential arrangement can qualify as concealment, effectively tolling limitations indefinitely. The majority's statement that "an agreement that is kept 'non-ink-to-paper' to avoid detection can qualify as an affirmative act of concealment" provides a ready-made playbook. *Id.*

The risk is not confined to antitrust—or even to alleged conspiracies. Fraudulent concealment applies to "every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946).

Plaintiffs with time-barred claims under RICO, ERISA, the securities laws, and beyond will look to this Circuit's decision as a roadmap for avoiding dismissal. They will plead vague allegations of an "unwritten" or "secret" agreement and contend that is enough to toll the statute—at least to survive an early motion to dismiss and proceed into costly discovery. *But see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (emphasizing the need for trial courts to "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed") (citation omitted). And because fraudulent concealment does not require a concerted agreement, the panel's reasoning could be invoked in cases involving a single actor accused of wrongdoing. The panel's rule opens the door to perpetual litigation exposure in virtually any field of federal litigation.

That is especially dangerous in large-scale class actions, where plaintiffs can wield the specter of sprawling discovery, massive judgments, and reputational harm to pressure defendants into settlements regardless of the underlying merit. *See, e.g., Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739 (1975) (noting the "widespread recognition" that securities class actions "present[] a danger

of vexatiousness different in degree and in kind from that which accompanies litigation in general"). As the Supreme Court has recognized, "[f]aced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011). The pressure is even greater when claims stretch back decades, well beyond the window during which any meaningful defense can be mounted.

The better rule—the one this Court has followed for decades—is that equitable tolling doctrines such as fraudulent concealment are the exception, not the rule. They require not just silence, but affirmative deception. That standard ensures truly concealed claims can still be heard while simultaneously guarding against open-ended exposure and erosion of repose. The panel's approach upends that balance. It should not stand.

## CONCLUSION

For these reasons, *amicus curiae* respectfully urge the Court to grant *en banc* rehearing and affirm the district court's dismissal of Plaintiffs-Appellants' complaint.

Respectfully submitted,

Kevin R. Palmer
Matthew P. Sappington
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062

Erica N. Peterson
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

*/s/ Kevin S. Elliker*
Elbert Lin
Kevin S. Elliker
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8656
kelliker@hunton.com

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Century Schoolbook 14-point font.

I further certify that this brief complies with Federal Rule of Appellate Procedure 29(b)(3) because it contains 2,599 words, excluding those portions of the brief exempted by Federal Rule of Appellate Procedure 32(f).

*/s/ Kevin S. Elliker*
Kevin S. Elliker

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2025, I caused the foregoing brief to be filed with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit. The Court's CM/ECF system was used to file the brief, and service will therefore be accomplished on all counsel of record.

*/s/ Kevin S. Elliker*
Kevin S. Elliker