No. 24-1465

# IN THE UNITED STATES COURT OF APPEALS
*for the*
# FOURTH CIRCUIT

SUSAN SCHARPF and ANTHONY D'ARMIENTO,
on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

v.

GENERAL DYNAMICS CORP.; BATH IRON WORKS CORP.;
ELECTRIC BOAT CORP.; GENERAL DYNAMICS INFORMATION
TECHNOLOGY, INC.; HUNTINGTON INGALLS INDUSTRIES, INC.;
NEWPORT NEWS SHIPBUILDING AND DRY DOCK CO.; INGALLS
SHIPBUILDING, INC.; HII MISSION TECHNOLOGIES CORP.;
HII FLEET SUPPORT GROUP LLC; MARINETTE MARINE
CORPORATION; BOLLINGER SHIPYARDS, LLC; GIBBS & COX, INC.;
SERCO, INC.; CACI INTERNATIONAL, INC.; THE COLUMBIA
GROUP, INC.; THOR SOLUTIONS, LLC; TRIDENTIS, LLC;
FASTSTREAM RECRUITMENT LTD.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Virginia at Alexandria

**PLAINTIFFS-APPELLANTS' RESPONSE TO DEFENDANTS-
APPELLEES' MOTION TO STAY MANDATE PENDING FILING OF
PETITION FOR WRIT OF CERTIORARI**

*Counsel for Plaintiffs-Appellants Listed on the Following Page*

Brent W. Johnson
Steven J. Toll
Robert W. Cobbs
Alison S. Deich
Zachary R. Glubiak
Sabrina S. Merold
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW
Suite 800
Washington, DC 20005
(202) 408-4600

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292

Kevin K. Green
HAGENS BERMAN SOBOL SHAPIRO LLP
533 F Street, Suite 207
San Diego, CA 92101
(619) 929-3340

Elaine T. Byszewski
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
(213) 330-7150

George F. Farah
Nicholas Jackson
HANDLEY FARAH & ANDERSON PLLC
33 Irving Place
New York, NY 10003
(212) 477-8090

Simon Wiener
HANDLEY FARAH & ANDERSON PLLC
68 Harrison Avenue, Suite 604
Boston, MA 02111
(202) 921-4567

*Counsel for Plaintiffs-Appellants*

Candice J. Enders
Julia R. McGrath
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000

Brian D. Clark
Arielle S. Wagner
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

Steve J. Teti
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
265 Franklin Street, Suite 1702
Boston, MA 02110
(617) 456-7701

*Additional Counsel for Plaintiffs-Appellants*

Pursuant to this Court's request, Plaintiffs-Appellants ("Plaintiffs") Susan Scharpf and Anthony D'Armiento submit this response opposing Defendants-Appellees' ("Defendants") Motion to Stay Mandate Pending Filing of Petition for Writ of Certiorari.

**INTRODUCTION**

A stay of the mandate is unwarranted for a host of reasons. *First*, the burdensome discovery Defendants fear will not arrive before the petition is decided, because months of preliminaries precede substantial discovery burdens and because Plaintiffs will *agree* to delay document production until resolution of the petition or the Supreme Court's decision on the case. *Second*, a stay would unnecessarily block the district court from ruling on pending motions to dismiss and managing those inexpensive but time-consuming preliminaries, delaying this case for five months to a year.[1] *Third*, Defendants' premise—that they will avoid discovery entirely if they prevail—is incorrect. Plaintiffs' counsel represent a class member who worked for Defendants within the limitations period; this case and its

---

[1] Defendants suggest they are requesting only a 90-day stay, but the stay continues until the Supreme Court decides. *See* Fed. R. App. P. 41(d)(2)(B)(ii) (once "the petition has been filed … the stay continues until the Supreme Court's final disposition"). It will be at least five months before briefing on Defendants' petition is completed and the Supreme Court considers it. *See* SCOTUSblog, *The certiorari process: Seeking Supreme Court review* (June 27, 2025), https://www.scotusblog.com/election-law-explainers/the-certiorari-process-seeking-supreme-court-review/. In the unlikely event the Supreme Court grants the petition, a decision would not be expected until next June.

1

discovery will proceed regardless of the outcome of Defendants' petition. Defendants will avoid no significant costs with a stay that they would not face later even if they prevailed. *Fourth*, Plaintiffs would be prejudiced by months of unnecessary delay on a litigation that will already take half a decade or more, seeking justice from a decades-old conspiracy. And *fifth*, Defendants' proposed petition poses no substantial question of law for the Supreme Court to resolve—only a granular question of whether Plaintiffs' allegations support the inference that Defendants' intention in striking a "non-ink-to-paper" agreement was *concealment*. The panel opinion applies Circuit precedent faithfully, and Defendants' attempt to manufacture a circuit split mischaracterizes the opinion.

Months of preliminary work must be completed before Defendants incur substantial discovery costs—work the parties could be doing now, at little expense, while the petition process unfolds. The district court must still resolve issues, including the plausibility of Plaintiffs' allegations, that it did not reach in its motion to dismiss opinion, and individual motions to dismiss are also pending. *See* JA350; JA357. It must enter several intensively negotiated framework orders governing the case (*e.g.*, on confidentiality, electronic discovery, and scheduling). After that, months of disclosures, formal discovery request exchanges, and negotiations precede the phase of discovery where parties must expand their teams and incur major expenses.

Delaying that work on the chance that Defendants' petition will secure one of the forty to fifty spots remaining on the Supreme Court's 2025 docket (out of thousands of petitions, many of constitutional importance) would needlessly add months to proceedings that typically take half a decade at least.[2] Defendants' concerns can be addressed under the district court's ample discretion to manage the litigation schedule to avoid undue or untimely burden. Indeed, Plaintiffs will *agree* to a schedule that stays document production (except *de minimis* discovery-scoping documents like organizational charts) until after the Supreme Court has denied Defendants' petition or decided the case.

Unnecessary delay prejudices Plaintiffs and the putative class. By the time Defendants' petition is decided, the case will have been pending more than two years, and class members have already been underpaid for decades. Defendants say months of delay does not mean much, but class members' *livelihoods* are at stake. Some class members have spent their *entire careers* in the industry without *ever* drawing a competitive salary, likely injured by thousands of dollars per year. At those stakes, months *matter*, especially added to years-long litigation. Moreover, with key facts extending back decades, witnesses' memories fade each day. The

---

[2] *See* Joshua Davis & Rose Kohles Clark, 2023 Antitrust Annual Report Class Actions in Federal Court at 2 (Nov. 2024), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5059771 (most antitrust class actions take 5 to 7 years).

parties should proceed with the time-consuming but inexpensive preliminary work *now*, especially because it will not significantly burden Defendants, and because Defendants will have to do this work eventually regardless of their petition.

Nor does this case present a "substantial question," *see* L.R. 41, such that there is a "reasonable probability" the Supreme Court will grant review, Mot. at 6. The Supreme Court only grants a small handful of the thousands of petitions it receives each year, and this case is unlikely to be one of them. This Court followed settled precedent in holding that Plaintiffs alleged affirmative acts of concealment, and Defendants' suggestion that the case created a circuit split rests on an overt mischaracterization of the opinion. No Circuit, including this one, allows fraudulent concealment claims to rest on "a bare allegation of an unwritten agreement[.]" Mot. at 1. Rather, in this Circuit and others, the question is whether the allegations *raise sufficient inference* that defendants *acted with intent to conceal*—a deeply factual and contextual inquiry. Op. at 20-24. This case presents that fact-specific question, which this Court correctly decided and is not a question appropriate for Supreme Court review.

## BACKGROUND

Plaintiffs allege Defendants conspired to suppress compensation and reduce mobility in the labor market for naval engineers. JA041. For over twenty years, Defendants agreed not to "poach" each other's engineers. *Id.* An extensive pre-suit

4

investigation identified multiple, independent witnesses who directly confirmed the existence of this conspiracy. JA074-079. The district court dismissed on statute-of-limitations grounds. JA364.

This Court reversed, holding that Plaintiffs adequately alleged fraudulent concealment. Op. at 27. Following *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119 (4th Cir. 1995), this Court held that "neither logic nor [our] precedent supports distinguishing between defendants who destroy evidence of their conspiracy and defendants who carefully avoid creating evidence in the first place." Op. at 4, 11. Examining Plaintiffs' detailed allegations of fraudulent concealment, this Court concluded that "an agreement that is kept 'non-ink-to-paper' to avoid detection can qualify as an affirmative act of concealment" and that it could "infer from Plaintiffs' allegations that Defendants' affirmative acts were intended to avoid detection." *Id.* at 9, 22. It specifically rejected Defendants' argument, Mot. at 1, 9-10, that this Court's precedents conflict with that holding. *See* Op. at 11-17.

Defendants filed a petition for rehearing en banc, Dkt. 102, which this Court denied after no judge requested a poll, Dkt. 110. Defendants now seek to stay the mandate while they seek certiorari. Dkt. 111-1.

## ARGUMENT

The "grant of a motion to stay the mandate … is *far from* a foregone conclusion." 16AA Catherine T. Struve, Fed. Prac. & Proc. Juris. § 3987.1 (5th ed.

5

May 2025) (emphasis added). To warrant a stay, the motion "must show that the certiorari petition would present a substantial question and set forth good cause for a stay." L.R. 41. Defendants' motion does neither. The mandate should issue and the district court should proceed, scheduling the case using its sound discretion to avoid undue burden.

## I. Defendants Have Not Shown Good Cause.

Contrary to Defendants' assertion, a stay would be both "inefficient and inequitable[.]" Mot. at 11. It would delay progress, prejudice Plaintiffs, and benefit Defendants only insofar as they seek delay.

### A. This Case Will Not Reach Discovery Before the Petition is Denied.

Defendants argue that absent a stay they will have to bear the costs of "extensive discovery" before the Supreme Court rules on their petition. Mot. at 7. But Defendants will not bear *any* significant discovery burden before a ruling—much less an unnecessary one—if the mandate issues.

*First*, Defendants' motion presumes that if they prevail at the Supreme Court, Defendants will never have to bear any burden of discovery. This is incorrect. Plaintiffs have been retained in this litigation by at least one naval engineer who suffered harm within the four-year limitations period. If Defendants succeed, Plaintiffs expect to file a new complaint with a new named plaintiff in the limitations period. Whether now or later, Defendants will face discovery in this suit. Compare

6

Defendants' case, *U.S. ex rel. Chandler v. Cook County*, 282 F.3d 448, 451 (7th Cir. 2002), in which the applicant would suffer "irreparable injury" from having to "prepar[e] for trial" without a stay—the most expensive and all-consuming phase of litigation—as the pending petition would determine the applicant's "immunity from trial[.]" Delay of costs that will come in any case cannot justify a stay.

*Second*, Defendants will not bear significant discovery burdens until long after the Supreme Court decides their petition. To reach discovery, the district court first must resolve the remainder of Defendants' pending joint and individual motions to dismiss (including from declarants Thor and Tridentis). *See* JA032-033; JA350; JA357. Waiting for the district court's decisions while the petition is pending requires *no* resources from Defendants.

Even after those motions are resolved, many preliminary steps (and months to a year) remain before intensive discovery begins. *See, e.g.*, *Jien v. Perdue Farms, Inc.*, No. 1:19-cv-02521 (D. Md. Feb. 8, 2023) (Dkt. 808) (approximately nine months in labor antitrust conspiracy case between resolution of motion to dismiss and first production of documents); *Brown v. JBS*, 1:22-cv-02946 (D. Colo. Apr. 3, 2025) (Dkt. 405) (approximately nine months, similar conspiracy).

These steps include negotiating a protective order governing use of confidential documents; negotiating an order governing production of electronic documents; adopting a privilege logging protocol; and negotiating a scheduling

7

order, usually with additional provisions for, *e.g.*, the number of depositions the parties will be allowed and other changes to default procedural rules. Though parties usually reach agreement on at least some of these case-governing documents, negotiations take weeks for each and often require motion practice.

Next, parties must trade initial Rule 26(a) disclosures and issue Requests for Production of Documents (to which each party has 30 days to respond). *See* Fed. R. Civ. P. 26(a); 34(b). The parties negotiate objections, the scope of documentary discovery, and proposed document custodians, often briefing disputed issues. The parties discuss the parameters of document search methodology, including the use of AI and similar technological tools. All of this takes *months*, and often more than a year, of discussions—usually between the same small set of attorneys from each party. It is only *after* these steps that the real costs of discovery are brought to bear, as the parties review and produce documents, hiring contract document reviewers and expanding their in-firm legal teams with additional attorneys. Costs build further as the parties prepare for and take depositions.

Again, Plaintiffs commit here that they will agree to stay Defendants' obligations to produce documents (with *de minimis* exceptions for discovery-scoping documents like organizational charts) until after Defendants' petition has been denied or the Supreme Court has issued a decision, whichever is later. There is

no reason to delay this case when time-consuming but inexpensive matters can be disposed of while the parties wait.

These kinds of granular case scheduling matters are typically committed to the district court, which has wide discretion to manage the litigation schedule. *See, e.g.*, *U.S. v. Allen*, 491 F.3d 178, 192 (4th Cir. 2007). This Court should deny Defendants' motion and leave this matter in the capable hands of the district court to resolve the pending motions to dismiss and manage the case to avoid undue or untimely burden.

### B. Unnecessary Delay Would Prejudice Plaintiffs.

Plaintiffs will be prejudiced if the mandate is stayed, delaying adjudication in a case that will already take years. The harms of Defendants' conspiracy are still ongoing, and thousands of putative class members *currently* receive lower compensation than they should. Those out of the industry are owed pay that they should have received years ago. In comparable no-poach cases, damages have been estimated at thousands of dollars per employee per year. *See, e.g.*, *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 283, 304 (N.D. Cal. 2016) ($646 million estimated damages for 9-year class of 10,042 animation workers—averaging $7,149 per class member per year). Recoveries have the potential to change class members' lives, and they should not be made to wait longer than truly necessary. Justice delayed is justice denied.

Defendants claim Plaintiffs will suffer no prejudice because "Plaintiffs themselves did not bring their claims for a decade or more after leaving the industry[.]" Mot. at 13. The audacity of this argument is jaw-dropping. Plaintiffs brought their claims *less than seven months* after they learned of Defendants' conspiracy in April 2023. *See* Op. at 5. They did not bring it sooner because Defendants *fraudulently concealed* the conspiracy from them, as this Court *just held* Plaintiffs sufficiently pled.

Defendants assert, improbably, that evidence "would not grow any more stale" during the pendency of a stay. Mot. at 12-13. But in cases such as this where a conspiracy has existed for decades, each day brings risks that witnesses will become unavailable and memories will fade. The increasingly distant timing of relevant events is reason to deny a stay, not to grant it.

Defendants have not shown good cause for a stay, because they will not be unduly burdened during their petition's pendency and Plaintiffs will be prejudiced if the mandate does not issue.

## II. This Case Does Not Present a Substantial Question Warranting Supreme Court Review.

Defendants argue their petition presents a "substantial question" with a "reasonable probability" that the Supreme Court will grant review. Mot. at 6 (quoting *Beaver v. Netherland*, 101 F.3d 977, 978 (4th Cir. 1996)). But Defendants

present neither "an important question of federal law that has not been, but should be, settled by [the Supreme Court]" nor a circuit split. Sup. Ct. R. 10(a), (c).

Defendants argued twice below that the position taken by the panel opinion conflicts with Circuit precedent and with decisions of other circuits. *See* Dkt. 83 at 22-32; Dkt. 102 at 9-14, 16-18. Twice this Court has rejected those arguments. Defendants now seek to stay *any* progress in the litigation because they believe the Supreme Court will afford them space on its limited docket *and* adopt those arguments.

Defendants' motion, though, rewrites Plaintiffs' allegations and mischaracterizes this Court's opinion in suggesting the panel held that "a bare allegation of an unwritten agreement" can support fraudulent concealment. Mot. at. 1. That is not so, and this Court correctly determined that is not what Plaintiffs alleged. Op. at 7, 18-19, 22-24. This Court clearly articulated the difference between unwritten agreements that are *concealing* from those that are *not*, as determined from reasonable inferences drawn from the factual allegations presented. *Id*. at 20-22. Defendants' argument that this case represents a "dramatic[] expan[sion of] the fraudulent concealment doctrine" or departure from established law warranting Supreme Court review hinges on this mischaracterization. Mot. at 7. But this Court's opinion was amply supported by Circuit precedent. *See* Op. at 11-12 ("Our cornerstone case of *Marlinton* … supports our conclusion that unwritten agreements

11

can constitute fraudulent concealment."); *see also id.* at 13 (discussing district court opinions that have applied *Marlinton* to similar allegations).

This accords with the decisions of other circuits. *See* Op. at 23. Defendants attempt to invent a circuit split over whether unwritten agreements *without indicia of concealment* sustain fraudulent concealment, Mot. at 7-9, but no circuit permits that. Both *Carrier Corp. v. Outokumpu Oyi*, 673 F.3d 430 (6th Cir. 2012) and *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248 (9th Cir. 1978), relied on by Defendants, Mot at. 8, ask the same question this Court considered: whether the circumstances alleged were sufficient to draw an inference of wrongful concealment. Both courts answered the question no based on the specific allegations at hand. *See Carrier*, 673 F.3d at 447; *Rutledge*, 576 F.2d at 250.[3] The selections Defendants quote, Mot. at 8, illustrate this: *Carrier* found the plaintiffs' allegations lacked "the requisite particularity[,]" 673 F.3d at 447, to support an inference of concealment and *Rutledge* found the allegations "conclusory statements[,]" 576 F.2d

---

[3] Nor do two district court cases, cabined to plaintiffs' specific allegations of concealment, suggest a circuit split. *See* Mot. at 9. In *In re Animation Workers Antitrust Litigation*, 87 F. Supp. 3d 1195, 1215-16 (N.D. Cal. 2015), the district court concluded that plaintiffs' allegations did not show an *effort* by defendants to conceal their conduct. This Court rejected a similar argument from Defendants. Op. at 18-24. In *In re Refrigerant Compressors Antitrust Litigation*, 795 F. Supp. 2d 647, 663-64 (E.D. Mich. 2011), plaintiffs failed to plead fraudulent concealment with sufficient particularity—an argument also rejected in this case. Op. at 18-20.

at 250. This Court specifically rejected the proposition that Plaintiffs' allegations were insufficiently particular or conclusory. Op. at 18-20.

If differences still exist between circuits in the *standard* for fraudulent concealment, they are diminishing rapidly. *See* Op. at 10-11 & n.4 (discussing the circuit courts coalescing around the affirmative acts standard). In any case, this case does not implicate which articulation of the fraudulent concealment standard is correct; it presents only the intensely case-specific and fact-bound question of whether Plaintiffs' allegations support an inference of concealing acts under the standard applied by a large majority of courts. That question did not warrant rehearing en banc by this Court, and it is not a substantial question appropriate for Supreme Court review.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants-Appellees' Motion to Stay.

Dated: June 30, 2025   */s/ Brent W. Johnson*

                                         Brent W. Johnson
                                         Steven J. Toll
                                         Robert W. Cobbs
                                         Alison S. Deich
                                         Zachary R. Glubiak
                                         Sabrina S. Merold
                                         COHEN MILSTEIN SELLERS & TOLL PLLC
                                         1100 New York Ave. NW, Suite 800
                                         Washington, DC 20005

Tel: (202) 408-4600
bjohnson@cohenmilstein.com
stoll@cohenmilstein.com
rcobbs@cohenmilstein.com
adeich@cohenmilstein.com
zglubiak@cohenmilstein.com
smerold@cohenmilstein.com

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL
SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000
shanas@hbsslaw.com
riop@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
steve@hbsslaw.com

Kevin K. Green
HAGENS BERMAN SOBOL
SHAPIRO LLP
533 F Street, Suite 207
San Diego, CA 92101
Tel: (619) 929-3340
keving@hbsslaw.com

Elaine T. Byszewski
HAGENS BERMAN SOBOL
SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Tel: (213) 330-7150

elaine@hbsslaw.com

George F. Farah
Nicholas Jackson
HANDLEY FARAH & ANDERSON
PLLC
33 Irving Place
New York, NY 10003
Tel: (212) 477-8090
gfarah@hfajustice.com
njackson@hfajustice.com

Simon Wiener
HANDLEY FARAH & ANDERSON
PLLC
68 Harrison Avenue, Suite 604
Boston, MA 02111
Tel: (202) 921-4567
swiener@hfajustice.com

*Counsel for Plaintiffs-Appellants*

Candice J. Enders
Julia R. McGrath
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
cenders@bm.net
jmcgrath@bm.net

Brian D. Clark
Arielle S. Wagner
LOCKRIDGE GRINDAL NAUEN
P.L.L.P.
100 Washington Avenue South,
Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
bdclark@locklaw.com

aswagner@locklaw.com

Stephen J. Teti
LOCKRIDGE GRINDAL NAUEN
P.L.L.P.
265 Franklin Street, Suite 1702
Boston, MA 02110
(617) 456-7701
sjteti@locklaw.com

***Additional Counsel for Plaintiffs-Appellants***

# CERTIFICATE OF COMPLIANCE

I certify that Plaintiffs-Appellants' Response to Defendants-Appellees' Motion to Stay Mandate Pending Filing of Petition for Writ of Certiorari complies with the word limit of FED. R. APP. P. 27(d)(2)(A) because it contains 2,915 words, excluding the items exempted by FED. R. APP. P. 32(f).

Plaintiffs-Appellants' Response complies with the typeface requirements of FED. R. APP. P. 27(d)(1)(E) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size in Times New Roman.

Dated: June 30, 2025　　　　　　　　*/s/ Brent W. Johnson*

　　　　　　　　　　　　　　　　　　Brent W. Johnson

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Plaintiffs-Appellants' Response to Defendants-Appellees' Motion to Stay Mandate Pending Filing of Petition for Writ of Certiorari with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system on June 30, 2025.

I also certify that the foregoing document is being served this day to all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Dated: June 30, 2025             */s/ Brent W. Johnson*

                                                      Brent W. Johnson